**ALBERT EINSTEIN MEDICAL CENTER, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary, Department of Health and Human Services, Defendant.**

**Civ. A. No. 91–6119.**

United States District Court, E.D. Pennsylvania.

Nov. 24, 1992.

Robert E. Mazer, Baltimore, MD, Peter J. Deeb, Philadelphia, PA, for plaintiff-appellant.

## MEMORANDUM

GAWTHROP, District Judge.

Before me are the parties' cross-motions for summary judgment. Plaintiff, Albert Einstein Medical Center ("Einstein"), seeks an order requiring the Provider Reimbursement Review Board ("PRRB") to accept jurisdiction over its challenge to the amount of reimbursement it received for services provided to Medicare patients during the 1986 fiscal year. Defendant, the Secretary of the Department of Health and Human Services ("the Secretary"), seeks an affirmance of the PRRB's determination that it was without jurisdiction to hear the appeal, since the appeal was not timely filed.

In the alternative, Einstein argues that this court should assert federal question jurisdiction and reach the merits of its reimbursement appeal. The Secretary asserts that the Medicare statute, 42 U.S.C. §§ 405(h) and 1395ii, bars the court from taking jurisdiction.

## BACKGROUND

### Statutory and Regulatory Scheme

Under the Medicare Program, a provider of services prepares a cost report at the end of each fiscal year. The cost report details the services rendered Medicare patients by the provider during the year, and requests reimbursement for those services. 42 C.F.R. § 405.1801(b). The cost report is submitted to the provider's "fiscal intermediary," a private entity (usually an insurance company) acting as the Secretary's agent. 42 U.S.C. § 1395h. The fiscal intermediary analyzes the cost report and issues a Notice of Program Reimbursement ("NPR"), which sets forth the total amount of reimbursement due the provider and individually lists the expenses allowed and disallowed. 42 C.F.R. § 405.1803.

If the provider is dissatisfied with the NPR, it may request a hearing before the PRRB within 180 days of the issuance of the NPR. 42 U.S.C. § 1395oo(a). The PRRB may affirm, modify, or reverse the decisions of the intermediary. 42 U.S.C. § 1395oo(d). The Secretary, either on his own motion or at

the request of the provider, may then review the matter within 60 days. 42 U.S.C. § 1395oo(f)(1). If the provider remains dissatisfied, it may seek review in the appropriate United States District Court within 60 days of the issuance of the final decision, whether that decision comes from the PRRB or the Secretary. 42 U.S.C. § 1395oo(f).

Within three years, the NPR may be reopened on motion of the provider, the fiscal intermediary, the PRRB, or the Secretary. 42 C.F.R. § 405.1885(a). Jurisdiction for determining whether to reopen is vested exclusively in the administrative body which rendered the last decision. 42 C.F.R. § 405.1885(c). In a case such as Einstein's, where the fiscal intermediary has jurisdiction over the reopening, the provider may appeal to the PRRB only after the matter is officially reopened and a final determination on the proposed revision is made by the fiscal intermediary. 42 C.F.R. § 405.1889. Under the regulations, a revision is a "separate and distinct determination" for purposes of appeal to the PRRB. 42 C.F.R. § 405.1889.

*Facts*

The material facts of this case are not in dispute. I shall briefly outline them. On September 29, 1986, Einstein filed a cost report for its fiscal year 1986. In the cost report, Einstein "self-disallowed" certain costs which were not reimbursable according to the Secretary's Provider Reimbursement Manual. However, Einstein did list three of the self-disallowed costs as "protested amounts": (1) malpractice insurance costs, (2) labor room days, and (3) recognition of a $13 million loss on advance refunding of debt. Einstein noted in its cover letter that it was listing the three items in order "to preserve and protect our right of appeal and other legal rights." On September 30, 1988, Einstein's fiscal intermediary, Independence Blue Cross and Blue Shield, issued the NPR for Einstein's fiscal year 1986. The NPR disallowed Einstein's three "protested amounts," but Einstein did not appeal the fiscal intermediary's determinations to the PRRB.

The fiscal intermediary reopened Einstein's 1986 NPR for the purpose of adjusting the amount of Einstein's malpractice insurance reimbursement, and it issued a revised NPR on July 14, 1989. The only difference between the two NPR's was that the revised NPR granted Einstein additional reimbursement for malpractice insurance.

On January 8, 1990, Einstein appealed the revised NPR to the PRRB. However, Einstein's appeal was not based on the malpractice insurance revision; rather, Einstein appealed the loss on advance refunding of debt, which had been disallowed by the original NPR and remained unchanged by the revised NPR. The PRRB dismissed Einstein's appeal on May 31, 1991, stating that the appeal was untimely and that, therefore, the PRRB lacked jurisdiction. The PRRB relied on 42 C.F.R. § 405.1889 for the proposition that a "revision shall be considered a separate and distinct determination" for appeal purposes.

On July 29, 1991, the Administrator of the Health Care Financing Administration affirmed the PRRB's ruling, also relying on 42 C.F.R. § 405.1889.

Einstein filed the present action on September 30, 1991, seeking an order requiring the PRRB to accept jurisdiction over its appeal of the fiscal intermediary's disallowance of the loss on advance refunding of debt.

## DISCUSSION

### I. *Jurisdiction of the PRRB*

■ The question presented in this case is whether the reopening and/or revision of an NPR by a fiscal intermediary renews the provider's right to appeal the entire NPR to the PRRB, or whether the provider may only appeal those portions of the NPR which were examined or changed during the reopening or revision. This question is not a novel one in this district. In *Delaware County Memorial Hosp. v. Sullivan*, Civ.A. No. 89–7151, 1991 WL 125979 (E.D.Pa. June 27, 1991), Judge Shapiro confronted a similar situation and held that the PRRB had not abused its discretion when it dismissed a provider's appeal of items not considered in an NPR reopening. In *Delaware County*, the fiscal intermediary reopened the provider's 1981 NPR in 1986 for the purpose of awarding

additional malpractice insurance reimbursement, just as the intermediary did here. The provider then attempted to appeal an uninsured malpractice settlement, which remained disallowed in the revised NPR. The PRRB held that the provider's appeal was time-barred, since the reopening was for the limited purpose of revising the malpractice insurance reimbursement amount, and therefore did not renew the provider's appeal rights with respect to any other aspects of the NPR. The district court affirmed.

In reaching her decision, Judge Shapiro rejected the reasoning of the court in *Minnesota Hosp. Ass'n v. Bowen*, 703 F.Supp. 780, 785 (D.Minn.1988), which held that "[s]o long as the item now disputed was contained in the cost report which was re-examined and amended by the fiscal intermediary, the provider may timely file an appeal of any item after the revised NPR is presented." I agree with Judge Shapiro that "[t]o permit an NPR, revising certain items by court order, to reopen an entire cost report for appeal of any item or even 'related' items, would nullify the 180–day appeal deadline and violate the jurisdictional requirements of the statute." *Delaware County*, Civ.A. No. 89–7151, slip op. at 16. I shall therefore affirm the decision of the PRRB.

Einstein's argument is based on the "plain language" of 42 U.S.C. § 1395*oo*(a). That section provides for a hearing before the PRRB for a provider which has filed a timely cost report, if:

   (1) such provider—

      (A)(i) *is dissatisfied with a final determination* of the organization serving as its fiscal intermediary pursuant to section 1395h of this title *as to the amount of total program reimbursement due* the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report, ...

   (2) the amount in controversy is $10,000 or more, and

   (3) *such provider files a request for a hearing within 180 days* after notice of the intermediary's final determination under paragraph (1)(A)(i). . . .

42 U.S.C. § 1395*oo*(a) (emphasis supplied). Einstein argues that the revised NPR issued by the intermediary on July 14, 1989, constitutes a "final determination ... as to the amount of total program reimbursement due the provider," and that therefore its January 8, 1990, appeal was timely, regardless of whether the items in dispute were considered by the intermediary during the reopening of the NPR.

■ Einstein correctly points out that, where the "plain meaning" of the statute is discernible from the face of the statute, the "plain meaning" controls. *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988). But where, as here, there have been successive "determinations," the statute does not provide any guidance as to whether the revised determination is "final" only as to the revisions, or only to matters considered during the reopening, or to the entire NPR. Thus, the "plain language," when juxtaposed with what plainly happened in this case, demonstrates a certain lurking ambiguity and suddenly becomes less plain.

In *Bethesda*, the providers had self-disallowed malpractice insurance costs, because the Secretary's 1979 regulations gave them no hope of recovering those costs from their fiscal intermediaries, which were bound to follow the Secretary's regulations. Rather than disputing the amounts on the face of their cost reports, the providers timely appealed the malpractice insurance costs directly to the PRRB, challenging the regulation. The Supreme Court held that the PRRB had jurisdiction over the appeal despite the providers' failure to seek reimbursement from their fiscal intermediaries in the first instance. Since the fiscal intermediaries were bound to follow the regulations, the Court reasoned that it would have been futile for the providers to claim the malpractice insurance costs. Thus, the Court held that the providers "could claim dissatisfaction, within the meaning of the statute, without incorporating their challenge in the cost reports filed with their fiscal intermediaries." *Bethesda*, 485 U.S. at 405, 108 S.Ct. at 1259.

But *Bethesda* does not control the outcome of this case for at least two reasons. First,

the *Bethesda* decision was based on an interpretation of the term "dissatisfied," while this case asks the court to define "final determination." While Einstein contends that the Court's arguably expansive interpretation of "dissatisfied" should be carried over to the interpretation of "final determination," the *Bethesda* Court never intimated that it was interpreting the statute "expansively" or otherwise; it was merely giving effect to the "plain language." I glean no new doctrine of statutory interpretation from the *Bethesda* decision; the Court simply interpreted one section of the Medicare statute according to its "plain meaning."

Second, the filing of the appeal to the PRRB in *Bethesda* was timely, so the Court never reached the question of whether an untimely appeal might be allowed by the "plain language." The *Bethesda* Court was concerned with the statute's exhaustion requirement, or the lack thereof. The Court refused to require providers to make futile protests of regulations to fiscal intermediaries in order to preserve their appeal rights. Indeed, traditionally, the law has not required the doing of a vain act. *See, e.g., Sunseri v. Mancuso,* 362 Pa. 161, 66 A.2d 830 (1949). And again, fiscal intermediaries are bound to follow the regulations. In contrast, Einstein could have obtained relief from the PRRB [1] or the district court had it chosen to appeal the disallowance of its advance refunding of debt after the issuance of the original NPR. Einstein made a conscious decision not to do so, presumably because it felt its chances of prevailing were not good. Now the NPR has been revised, and Einstein has apparently changed its mind on its probability of prevailing. But Einstein's appeal has nothing to do with the subject of the NPR's reopening. In essence, Einstein is attempting to use the reopening as a means of reviving a claim on which the statute of limitations has run. Neither the statute nor *Bethesda* condones such an action.

Einstein also relies on *Edgewater Hosp. v. Bowen,* 857 F.2d 1123, *modified,* 866 F.2d 228 (7th Cir.). In *Edgewater,* the provider,

Edgewater, requested that its fiscal intermediary reopen its NPR and reconsider four disallowances. In a letter, the fiscal intermediary granted one of Edgewater's disputed claims and denied the others. Shortly thereafter, the fiscal intermediary issued a revised NPR with only the one item changed. The court held that Edgewater could appeal the fiscal intermediary's determinations on all four items to the PRRB:

> The intermediary acknowledged that it decided not to change three of the cost items. That decision itself was a reconsideration, 'an affirmative action ... to re-examine or question the correctness of a determination or decision otherwise final.' ... To revise is 'to see again' or 'to look back at' something; alteration is not a necessary component of a revision or a review. In this case [the intermediary] reviewed all four items disputed by Edgewater and concluded that three costs were properly disallowed but that one could be adjusted. Because the intermediary based its revised second NPR on that review, all four 'matters at issue' were properly appealed to the Board by Edgewater.

*Edgewater,* 857 F.2d at 1135. Later, the court stated that "the reopening was a reconsideration of all cost items *challenged by the provider....* We hold that the second NPR of March 30, 1984 was a 'final determination' under section 1395oo(a) of the Act on all *four* 'matters in issue' as that term is used in section 405.1885 of the Regulations." *Edgewater,* 857 F.2d at 1137 (emphasis supplied).

The appeal at bar is fundamentally different from the one in *Edgewater.* Here, the NPR was not reopened at the request of the provider; it was reopened by the fiscal intermediary for one specific purpose. There is no indication that the fiscal intermediary reviewed any items in the cost report other than malpractice insurance reimbursement. Thus, the *Edgewater* court's holding that a "revision" need not result in an amendment in order to be appealable, is inapplicable to Einstein's appeal. Here, the intermediary took no "affirmative action" with respect to

---

1. As the *Bethesda* court put it: "The Board has a role in shaping the controversy that is subject to judicial review; the fiscal intermediary does not." *Bethesda,* 485 U.S. at 407, 108 S.Ct. at 1260.

the rest of the cost report, since only one area was reopened. There was simply no other "revision" to appeal. Einstein's appeal of the fiscal intermediary's original disallowance of its advance refunding of debt just does not fit within the *Edgewater* holding, which clearly limited the PRRB's jurisdiction to those matters which had been challenged by the provider and were reconsidered during the reopening process.

The court in *Minnesota Hosp. Ass'n v. Bowen*, 703 F.Supp. 780 (D.Minn.1988), did hold that a provider may appeal any item contained in a revised cost report, whether or not that item had been re-examined during the reopening. However, I agree with Judge Shapiro that "[t]he holding of *Minnesota* is an unwarranted extension of *Bethesda* and *Edgewater.*" *Delaware County*, Civ.A. No. 89–7151, slip op. at 14. Judge Shapiro continued:

Neither *Bethesda* nor *Edgewater* suggest [sic] that a provider can appeal an item rejected in an original NPR and not appealed to the PRRB within 180 days, merely because the intermediary issues an NPR revising an item properly challenged and changed as a result of judicial review. The Supreme Court in *Bethesda* noted that the discretionary authority of the PRRB under 42 U.S.C. § 1395oo(d), to modify items uncontested before the fiscal intermediary, applies *after* the PRRB obtains jurisdiction under § 1395oo(a). 485 U.S. at 406 [108 S.Ct. at 1259]. The Court did not suggest that a provider has a *right* to obtain PRRB jurisdiction over a claim where the provider has failed to comply with the jurisdictional requirement of timely appeal.

*Delaware County*, Civ.A. No. 89–7151, slip op. at 14–15 (emphasis in original). I agree with Judge Shapiro's reading of *Bethesda*, *Edgewater*, and the statute, over that of the *Minnesota* court.

Judge Shapiro also aptly points out that under Einstein's view, "[a] provider could keep an entire cost report open indefinitely by successfully appealing one item, awaiting a revised NPR, appealing another item, and so on." *Delaware County*, Civ.A. No. 89–

7151, slip op. at 16. That would indeed be the result; and an unfortunate one.

It should be noted that the Medicare statute does not require the reopening of an NPR. Rather, reopening is entirely a product of the Secretary's regulations. Since the Secretary is not statutorily required to reopen *any* portion of an NPR, it would be strange indeed to extend the regulations to subject an entire NPR to another PRRB review simply because the Secretary or one of his agents chose to reopen the NPR for the purpose of making a single adjustment. Such a holding would erōde the 180–day requirement of 42 U.S.C. § 1395oo(a)(3), and would discourage the Secretary from reopening inaccurate NPR's for fear of being forced to endure a lengthy appeals process on extraneous issues. Surely, providers such as Einstein would not wish to discourage the Secretary from reopening NPR's in order to award the providers additional reimbursement, as was the case with the reopening here.

The cover letter which Einstein attached to its 1986 cost report clearly shows that Einstein contemplated appealing the original NPR. Yet it chose not to do so. After the issuance of the revised NPR, Einstein apparently changed its·mind and attempted to appeal the disallowance of its loss on advance refunding of debt. But the time period during which Einstein could have appealed the original NPR had expired. The fortuitous event of the reopening and revision of the NPR, combined with some interim court decisions potentially favorable to Einstein's position, cannot allow Einstein to circumvent the plain language of the statute, which requires an appeal to be filed within 180 days.

This case is virtually indistinguishable from *Delaware County*. The provider in that case raised the same arguments as does Einstein in this case, and I find Judge Shapiro's reasoning in rejecting those arguments unassailable. I may only reverse the PRRB's refusal of jurisdiction if the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). I find the PRRB's decision to refuse jurisdiction over Einstein's appeal to be a reasonable application of the Secretary's reopening regulations,

and I find that those regulations do not violate any portion of the Medicare statute.

## II. *Jurisdiction of the District Court*

█ Einstein argues in the alternative that this court has jurisdiction to decide its appeal directly under 28 U.S.C. § 1331, federal question jurisdiction, or to assert federal question jurisdiction and remand the case to the PRRB for a hearing.

The Medicare Statute, through 42 U.S.C. § 1395ii, incorporates 42 U.S.C. § 405(h), the jurisdictional provision of the Social Security Act. That section provides, in full:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). As the Third Circuit has stated, this section "removes from the federal courts any jurisdiction over claims arising under the Medicare Act for reimbursement, except as to the extent allowed in 42 U.S.C. § 1395oo(f)." *Abington Memorial Hosp. v. Heckler,* 750 F.2d 242, 244 (3d Cir.1984), *cert. denied,* 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985). The court continued: "Section 1395oo of the Act establishes the Provider Reimbursement Review Board as the forum of first resort, and requires exhaustion of one's remedies there before court review is appropriate." *Abington,* 750 F.2d at 244. In Part I of this Memorandum, I examined the PRRB's decision to refuse jurisdiction, and found that decision to be correct. Einstein has thus received all the judicial review to which it is entitled. To exercise federal question jurisdiction over Ein-

stein's claims would be to ignore the express instructions of 42 U.S.C. § 405(h) that such jurisdiction not be exercised. As the Supreme Court stated in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), "[t]hat the third sentence of § 405(h) is more than a codified requirement of administrative exhaustion is plain from its own language, which is sweeping and direct and which states that *no* action shall be brought under § 1331." *Weinberger,* 422 U.S. at 757, 95 S.Ct. at 2463 (emphasis in original).

In support of its assertion that this court may exercise federal question jurisdiction, Einstein relies on a lone district court decision, *Memorial Hosp. v. Sullivan,* 779 F.Supp. 1410 (D.D.C.1991). But the *Memorial* decision is contrary to the statute and the substantial weight of authority. *See, e.g., Abington; St. Joseph's Hosp. v. Heckler,* 786 F.2d 848 (8th Cir.1986); *Saline Community Hosp. Ass'n v. Secretary of Health & Human Services,* 744 F.2d 517 (6th Cir.1984); *V.N.A. of Greater Tift County v. Heckler,* 711 F.2d 1020 (11th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). The *Memorial* decision does not establish that the courts are now more willing to exercise federal question jurisdiction in Medicare cases; rather, the decision is a very narrow one on very specific facts.[2] The case before me is not like *Memorial,* where the provider was misled by the Secretary with respect to its appeal rights, nor is Einstein's a situation in which the provider has been strangled with bureaucratic red tape. Einstein either slept on its appeal rights, or, for tactical reasons, chose not to timely exercise those rights. I cannot undo Einstein's nonfeasance by circumventing the clear intention of Congress: that the courts not exercise federal question jurisdiction over Medicare claims.

For all of the reasons stated above, I shall affirm the decision of the PRRB, deny Einstein's motion for summary judgment, and

---

**2.** In *Memorial,* "the Secretary directed those in Plaintiff's position *not* to appeal to the PRRB, but instead to file for reopening of the cost reports to include self-disallowed data." *Memorial,* 779 F.Supp. at 1412 (emphasis in original). The court continued, "the Secretary cannot relegate providers to a deadend procedure under the

Medicare statute, and then argue that the provider loses because the Medicare statute is the exclusive means of redress. When such bureaucratic red tape strangles a provider's right to judicial review, the Court may invoke its federal question jurisdiction and mandamus power." *Id.*

grant the Secretary's motion for summary judgment.