**BINGHAMTON GENERAL HOSPITAL, Cortland Memorial Hospital, Horton Memorial Hospital, Long Island Jewish Medical Center, Mercy Community Hospital, New Rochelle Hospital, Phelps Memorial Hospital, St. Mary's Hospital at Amsterdam, the Brookdale Hospital Medical Center, the Catholic Medical Center of Brooklyn and Queens, Inc., the University Hospital of New York University Medical Center—Tisch Hospital, United Hospital Medical Center, Victory Memorial Hospital, White Plains Hospital Center, Yonkers General Hospital, Plaintiffs,**

v.

**Donna E. SHALALA, Secretary, United States Department of Health and Human Services, and Empire Blue Cross Blue Shield, Defendants.**

**No. 93 Civ. 284 (LBS).**

United States District Court, S.D. New York.

June 22, 1994.

Epstein Becker & Green, P.C., New York City (Robert P. Borsody, Esq. of counsel), for plaintiffs.

Mary Jo White, U.S. Atty. for the S.D. of New York, New York City (Aimee B. Wolfson, Asst. U.S. Atty., of counsel), for defendants.

## OPINION

SAND, J.

This action presents us with an issue arising under the Medicare statute which has not previously been addressed by the courts of this circuit, and on which other circuits are split: whether the refusal of a "fiscal intermediary" to reopen a Medicare service provider's cost report is judicially or administratively reviewable.[1] We hold that it is not.

The action is brought by fifteen New York hospitals (the "hospitals") that provide services under the Medicare program against the Secretary of Health and Human Services (the "Secretary") and Empire Blue Cross and Blue Shield ("Empire"). The hospitals seek additional reimbursement from Empire for services they provided under the Medicare program for the years 1980, 1981, and 1982. They rely on the fact that the courts have since overturned particular regulations on which they relied in preparing their cost reports for those years (the "cost reports") and have ordered that provider hospitals be compensated more generously. The Secretary does not contest plaintiffs' right to additional reimbursement under the substituted regulations, but argues instead that plaintiffs' attempt to reopen their cost reports is untimely and that this Court lacks jurisdiction to consider its merits.

This action arose after plaintiffs petitioned Empire in 1991 to reopen their cost reports and Empire denied their request on the ground that it was untimely. The hospitals appealed Empire's decision to the agency charged with overseeing the Medicare reim-

---

1. One court within this circuit, in a recent, unpublished order, has addressed a related question: whether a fiscal intermediary's reopening of a notice of program reimbursement ("NPR") in order to reconsider particular matters renews the provider's right to appeal the entire NPR, or whether the provider may only appeal those por- tions of the NPR which were examined or changed during the reopening. *See Rutland Regional Med. Ctr. v. Sullivan,* 835 F.Supp. 754 (D.Vt.1993) (adopting magistrate judge's report and recommendation of Jan. 15, 1993, holding that provider may appeal only examined portions of NPR).

bursement process, the Provider Reimbursement Review Board (the "PRRB" or the "Board"), which ruled that it lacked jurisdiction under the Medicare regulations to consider plaintiffs' appeal. Plaintiffs then brought this action, asking this Court to enter judgment: (1) directing the Board to exercise its jurisdiction to review Empire's refusal to reopen the cost reports; (2) reversing Empire's refusal to reopen the cost reports; and (3) declaring that plaintiffs are entitled to the requested modification of their cost reports, which would increase plaintiffs' compensation from Medicare for the 1980, 1981, and 1982 years.

Defendants have moved to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, we grant defendants' motion dismissing this case as a matter of law.

Before we turn to the facts underlying this dispute, we briefly review the relevant statutory and regulatory framework, as an understanding of that framework is essential to the discussion which follows.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 to 1395ccc (1988) (the "Medicare statute"), which establishes the Medicare health insurance program for the elderly and disabled. Medicare is divided into two main parts: Part A, which provides insurance for inpatient institutional services, home health services, and post-hospital services, id. §§ 1395c to 1395i–4; and Part B, which covers physician, outpatient hospital, and various other health services, id. §§ 1395j to 1395w–4. Hospitals and skilled nursing facilities may participate in Part A of the Medicare program by entering into a "provider agreement" with the Secretary. Id. § 1395h. Under these agreements, participating hospitals ("providers"), such as plaintiffs, provide care to persons covered by Medicare and seek reimbursement from private insurance companies ("fiscal intermediaries"), in this case

Empire; the insurance companies, acting as agents of the Secretary, are in turn reimbursed by the Health Care Financing Administration ("HCFA"), the agency entrusted by the Secretary with management of the Medicare program. Id.; 42 C.F.R. part 421 (1993).

In order to receive reimbursement from the Medicare program, a provider must file an annual cost report with its fiscal intermediary, detailing the services rendered to Medicare patients during the year. 42 C.F.R. § 413.20. The intermediary analyzes the cost report and issues a "notice of program reimbursement" ("NPR"), which sets forth the total amount of reimbursement due the provider and lists the individual expenses allowed and disallowed. Id. § 405.1803.

If a provider is dissatisfied with the NPR, it may request a hearing before the PRRB within 180 days of issuance of the NPR. 42 U.S.C. § 1395oo(a), (b). The PRRB may affirm, modify, or reverse the decision of the intermediary. Id. § 1395oo(d). The Secretary, either on her own motion or at the request of the provider, may then review the matter within sixty days. Id. § 1395oo(f)(1). If the provider remains dissatisfied, it may seek judicial review in the appropriate United States district court within 60 days of issuance of the final decision, whether that decision comes from the PRRB or the Secretary. Id.

Generally, the administrative appeal and judicial review process established by § 1395oo ends further inquiry into a provider's Medicare reimbursement for a given year; if the provider does not appeal the final cost report determination in an NPR to the PRRB within 180 days (pursuant to subsections (a) or (b)), and appeal the subsequent PRRB ruling or modification by the Secretary within 60 days (pursuant to subsection (f)), the cost report is closed and the amount of reimbursement is not subject to further review.

The Medicare regulations, however, permit one exception to this administrative timetable, an exception that is central to the dispute before us: A provider may ask an intermediary to "reopen" an NPR for revision after the timetable set by § 1395oo has run.

42 C.F.R. § 405.1885 to .1889. Any such request to reopen must be made within three years of the intermediary's decision, although this three-year limit is waived if it is established that the decision "was procured by fraud or similar fault of any party." *Id.* § 405.1885(a), (d). The Medicare regulations provide no express mechanism for appealing decisions denying a reopening request, and it is this lack of express authorization for such an appeal that is at the center of the controversy before us.

### B. *Setting the Stage: Medicare Reimbursement of Malpractice Insurance*

Plaintiffs in this case seek a reopening of their 1980, 1981, and 1982 cost reports in order to increase the amount of reimbursement for their malpractice insurance expenses. The basis for their claim arises from a series of interrelated regulatory changes and court decisions, of which only a cursory summary is necessary.

Prior to October 1, 1983 (the period relevant to this case), the Medicare program reimbursed Part A providers on the basis of the provider's "reasonable cost" of furnishing covered services to beneficiaries, or the provider's customary charge for a particular service, whichever was lower. *See* 42 U.S.C. § 1395f(b)(1). Before 1979, one particular methodology (the "pre–1979 utilization method") was employed to calculate hospitals' malpractice insurance reimbursements. In 1979, the Secretary promulgated a new rule (the "1979 malpractice rule") which changed the method of calculating reimbursement for malpractice insurance costs in a manner which significantly reduced hospitals' reimbursement. The 1979 rule, however, was invalidated by the courts. *See, e.g., Tallahassee Mem. Regional Med. Ctr. v. Bowen,* 815 F.2d 1435 (11th Cir.1987) (invalidating 1979 malpractice rule), *cert. denied,* 485 U.S. 1020, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988). In response to this judicial invalidation, as well as to new data, the Secretary published a new rule, effective May 1, 1986 (the "1986 malpractice rule"). This 1986 rule replaced the 1979 rule with a new methodology for calculating hospital malpractice insurance costs, one which significantly increased hospitals' reimbursement for their malpractice insurance costs, but not to the level of pre–1979 reimbursement.

As first published, the 1986 malpractice rule applied retroactively to cost-reporting periods beginning July 1, 1979. *See* 51 Fed. Reg. 11142 (1986). The rule's retroactive effect, however, was overturned by the Supreme Court in 1988. *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). In response, the Secretary discontinued the retroactive application of the 1986 rule and determined that claims for cost-reporting periods predating the 1986 rule would be reimbursed under the earlier, pre–1979 reimbursement method. HCFA Ruling 89–1, Medicare & Medicaid Guide (CCH) ¶ 6139 (Jan. 26, 1989) at 2061–16. The Secretary agreed to settle all pending unsettled claims challenging reimbursement under the 1979 and 1986 rules, using the pre–1979 reimbursement method. *See* HHS Settlement Offer, Medicare & Medicaid Guide (CCH) ¶ 6139 (May 11, 1988) at 2061–5.

### C. *Procedural History*

Plaintiffs, who had filed timely cost reports with Empire for 1980, 1981, and 1982 using the now-invalidated 1979 malpractice rule, had accordingly been undercompensated for their malpractice insurance costs and were consequently eligible to participate in the Secretary's 1988 settlement offer. None of the plaintiff hospitals, however, attempted to participate in the settlement for the cost reports at issue in this suit. *See* September 27, 1993 Stipulation of matters not in dispute ("Stipulation") ¶ 4. It was not until August 5, 1991 that the hospitals first petitioned Empire to reopen their 1980, 1981, and 1982 cost reports and to increase their reimbursement for malpractice costs based upon the pre–1979 reimbursement method. Administrative Record ("A.R.") at 287–94. On September 9, 1991, Empire denied the hospitals' reopening request on the grounds that plaintiffs' petitions were untimely because they

were filed more than three years after the NPRs became final. A.R. at 296.[2]

Plaintiffs then filed an appeal with the PRRB within 180 days of receiving Empire's denial of their reopening request. A.R. at 315–22. In their petition to the Board, plaintiffs argued that Empire's denial of their request should be overturned because Empire, by relying on a now-invalidated method of calculating reimbursement, had engaged in "fraud or similar fault," thus waiving the three-year time limit for reopening. A.R. at 3–6, 317–19. Plaintiffs argued that the Board could review Empire's refusal to reopen the cost reports as a final intermediary determination subject to administrative review under 42 U.S.C. § 1395oo (b). A.R. at 4. The Board, however, did not reach the merits of plaintiffs' reopening claim but held instead that it lacked jurisdiction over the appeal. In a one-page letter ruling, the Board held that, pursuant to 42 C.F.R. § 405.1885(c), jurisdiction to consider reopening was vested exclusively with the last administrative body to issue a decision, in this case Empire. A.R. at 1. Plaintiffs then filed this suit within 60 days of receiving the Board's decision.

## II. *DISCUSSION*

Plaintiffs ask us to enter judgment: (1) directing the Board to exercise its jurisdiction to review Empire's refusal to reopen the cost reports; (2) reversing Empire's refusal to reopen the cost reports; and (3) declaring that plaintiffs are entitled to the requested modification of their cost reports, which would increase plaintiffs' compensation from Medicare for the 1980, 1981, and 1982 years.

As set out below, however, our jurisdiction under the Medicare statute is limited to addressing the first of these three claims, that is, to reviewing the PRRB's decision that it lacked jurisdiction to review Empire's reopening refusal. We have jurisdiction to review the PRRB decision under 42 U.S.C. 1395oo (f)(1). As set out in section C below, the courts have disagreed as to whether the Medicare statute confers jurisdiction on the

PRRB to review intermediaries' refusals to reopen contested cost reports. Accordingly, we consider the regulations and other agency actions implementing the statutory scheme. We conclude that the regulations and the Medicare Provider Reimbursement Manual clearly foreclose PRRB review of denials of reopening. As this is a reasonable interpretation of the Medicare statute, we will not overturn it. Accordingly, we conclude that the PRRB did not err in concluding that it lacked jurisdiction to review Empire's denial of plaintiffs' reopening request, and we grant summary judgment to defendants.

### A. *Applicable Standards of Review*

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and the moving party is entitled to "judgment as a matter of law." Fed.R.Civ.P. 56(c). In examining the record, the court must view the facts in the light most favorable to the non-moving party, and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Maresco v. Evans Chemetics*, 964 F.2d 106, 110 (2d Cir.1992). In this case, no material facts are in dispute and the issue is solely one of statutory construction, so the matter may properly be disposed of by summary judgment.

"The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala*, —— U.S. ——, ——, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)); *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403, 108 S.Ct. 1255, 1258, 99 L.Ed.2d 460 (1988). If Congress has "directly spoken to the precise question at issue," the court need not defer to an agency interpretation but "must give effect to the unambiguously expressed intent

---

2. Empire issued NPRs to the hospitals at various times between 1982 and 1985. After receiving the various NPRs, none of the hospitals filed an appeal seeking review of the reimbursement for malpractice insurance costs with the PRRB within the 180–day period set by 42 U.S.C. § 1395oo(a). Stipulation ¶ 1. Nor did any of the plaintiff hospitals file a request to reopen their cost reports within three years of receiving their NPRs. *Id.* ¶ 3.

of Congress." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82.

■ If, on the other hand, the language of the statute is silent or ambiguous with respect to the specific issue under consideration, we must proceed to the second step of *Chevron* and address the construction put on the statute by the agency entrusted with its administration. *Id.* at 843–45, 104 S.Ct. at 2782–83. Judicial review of Medicare reimbursement decisions is conducted in accordance with the Administrative Procedure Act ("APA"), Chapter 7 of U.S.C. Title 5. 42 U.S.C. § 1395oo(f)(1). Pursuant to the APA, a court reviewing agency action will hold unlawful and set aside agency action, findings, and conclusions if they are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

■ This standard of review is highly deferential. A court is to accord considerable weight to an agency's construction of a statutory scheme it is entrusted to administer. *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782; *Atlantic States Legal Foundation v. Eastman Kodak Co.*, 12 F.3d 353, 358 (2d Cir.1993). We "generally will defer to a permissible interpretation." *Good Samaritan Hosp. v. Shalala*, — U.S. —, —, 113 S.Ct. 2151, 2159, 124 L.Ed.2d 368 (1993). Deference is especially appropriate where Congress has delegated responsibility for a regulatory scheme as intricate as Medicare. *Butler County Mem. Hosp. v. Heckler*, 780 F.2d 352, 356 (3d Cir.1985) (deference appropriate for complex Medicare reimbursement scheme); *DeJesus v. Perales*, 770 F.2d 316, 327 (2d Cir.1985) (Friendly, J.) ("courts must exhibit particular deference to the Secretary's position with respect to legislation as intricate as [Medicaid]"), *cert. denied*, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). The scope of the court's review of agency action is confined to the full administrative record before the agency at the time the agency action was taken. APA § 706, 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971).

**B.** *Plaintiffs' Reopening and Reimbursement Claims*

■ Plaintiffs ask us to remand this case to Empire with directions to reopen the cost reports and make payments to the hospitals in accordance with the Secretary's revised policies for malpractice costs. They contend that the hospitals' request to reopen was not untimely, as Empire concluded, but instead falls under the exception in the Medicare reimbursement regulations which allows an NPR to be reopened after the three-year time limit has expired if the NPR "was procured by fraud or similar fault of any party." 42 C.F.R. § 405.1885(d). The Secretary's concession that its reimbursement policies at the time were invalid, plaintiffs contend, provides the necessary "similar fault." [3] Accordingly, they argue, Empire's refusal to reopen constitutes abuse of discretion.

■ This Court, however, lacks jurisdiction to explore the merits of these issues. Federal jurisdiction to review administrative decisions under the Medicare statute is sharply restricted by statute; Congress has expressly precluded general federal-question review of agency action arising under the statute and has made clear that judicial review is available only to the extent that the statute provides. *See* 42 U.S.C. § 1395ii (incorporating into the Medicare statute the jurisdiction-preclusion section of the Social Security Act, 42 U.S.C. 405(h), which provides that "[n]o findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided"); *Heckler v. Ringer*, 466 U.S. 602, 614–16, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984); *Califano v. Sanders*, 430 U.S. 99, 108–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977); *Weinberger v. Salfi*, 422

---

**3.** Plaintiffs also rely on a provision of the Medicare Provider Reimbursement Manual ("PRM"), which provides for reopening when the intermediary's determination is found to be "inconsistent with the law." PRM § 2931.2. This section, however, does not apply to plaintiffs' reopening request, but governs only reopening requests made within three years of the intermediary's decision. *See* PRM § 2931.1 (setting 3–year time limit on reopening, with the only exception being for "fraud or similar fault," § 2931.1(F)).

U.S. 749, 760–61, 95 S.Ct. 2457, 2464–65, 45 L.Ed.2d 522 (1975).

Under the Medicare statute, the sole route for a provider to obtain judicial review of disputed reimbursement claims is found in § 1395oo (f)(1). This subsection provides, in pertinent part:

> Providers shall have the right to obtain judicial review of *any final decision of the Board* ... by a civil action commenced within 60 days of the date on which notice of any final decision ... is received....

42 U.S.C. § 1395oo (f)(1) (emphasis added).[4]

The PRRB's decision that it lacks jurisdiction is a "final decision of the Board" which triggers the right to judicial review. *Edgewater Hosp. Inc. v. Bowen*, 857 F.2d 1123, 1130–32 (7th Cir.1988); *St. Joseph's Hosp. v. Heckler*, 786 F.2d 848, 851 (8th Cir.1986); *Saline Community Hosp. Ass'n v. Secretary of HHS*, 744 F.2d 517, 519–20 (6th Cir.1984). This Court's jurisdiction is limited, however, to a review of whether the PRRB erred in determining that it lacked jurisdiction. *Saline*, 744 F.2d at 520; *Staten Island Hosp. v. Sullivan*, No. 91–0733 (RCL), slip op. at 12 (D.D.C. Mar. 31, 1992). Since the Court does not have subject matter jurisdiction over the merits of plaintiffs' reopening claim or their underlying reimbursement claims, those claims are dismissed pursuant to Rule 12(b)(1).

## C. *Review of the PRRB's Decision*

▌ Plaintiffs ask us, alternatively, to reverse the Board's refusal of jurisdiction and to direct it to exercise its jurisdiction to review Empire's denial of reopening. In reviewing the Board's determination, we first consider the provisions in the Medicare statute which govern PRRB jurisdiction. Finding these provisions less than fully clear, we then turn to the regulations.

### 1. *The Medicare Statute*

Section 1395oo of the Medicare statute governs PRRB hearings as well as appeals of PRRB decisions. Subsection (a) confers jurisdiction on the Board to hear appeals from decisions by intermediaries, and it is to this provision that we turn first in considering the Board's jurisdiction to review denials of reopening requests. We turn subsequently to two other provisions which plaintiffs urge us to consider, and conclude that they do not confer jurisdiction on the Board.

#### a. *Subsection 1395oo(a): Review of "Final Determinations" of Intermediaries*

42 U.S.C. § 1395oo (a) confers jurisdiction on the PRRB to hear appeals. It provides, in pertinent part:

> Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... if—
>
> (1) such provider—
>
> (A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ...
>
> ....
>
> (2) the amount in controversy is $10,000 or more, and
>
> (3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination ...

For purposes of this litigation, the relevant question posed by this section is: What constitutes a "final determination" by an intermediary? In particular: Is a denial of a reopening request a "final determination"? Other sections of the Medicare statute provide little help. The statute does not address reopening procedures; instead, these are authorized solely by the implementing regulations.

---

4. A provider may also bypass the PRRB and seek expedited judicial review of an intermediary's action which involves a question of law or regulation which the PRRB concludes it is without authority to decide. 42 U.S.C. § 1395oo (f)(1). This provision, however, may not be used (as plaintiffs concede) unless the PRRB first concludes that it has jurisdiction. *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 406–07, 108 S.Ct. 1255, 1259–60, 99 L.Ed.2d 460 (1988); *Edgewater Hosp. Inc. v. Bowen*, 857 F.2d 1123, 1130 (7th Cir.1988) (distinguishing Board's determination that it is "without authority" from determination that it is without *jurisdiction* ).

The Supreme Court has not addressed this question. Contrary to plaintiffs' assertions, the Court's decision in *Bethesda Hospital Ass'n v. Bowen*, 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988), which addressed the scope of the PRRB's review authority under § 1395oo (a), is not dispositive of this question. In *Bethesda*, the Court held that the PRRB may review a provider's challenge to a Medicare regulation even though the provider failed earlier to contest the regulation's validity in the cost report it submitted to its intermediary. In reaching this conclusion, the Court examined the language of § 1395oo (a), but it did not address the language that is the key to the issue before us, the meaning of "final determination"; rather, it focused on the requirement that a provider be "dissatisfied" with the intermediary's determination. The Court concluded that a provider's "dissatisfaction" did not need to be registered first with an intermediary when such a challenge would prove futile, but could be raised for the first time at a hearing before the PRRB. *Id.* at 404–05, 108 S.Ct. at 1258–59.

This conclusion of the Court in *Bethesda* has no bearing on the issue before us. The *Bethesda* case arose on direct, timely appeal to the PRRB, *id.* at 401–02, 108 S.Ct. at 1257–58, not on application for reopening. The Court in *Bethesda* thus was not concerned, as we are, with what constituted a "final determination" by an intermediary bestowing jurisdiction on the Board, but rather with the scope of the Board's review power *once it has already obtained jurisdiction* over an intermediary's decision.[5] *Id.* at 405–06, 108 S.Ct. at 1259; *see also Albert Einstein Med. Ctr. v. Sullivan*, 830 F.Supp. 846, 849–50 (E.D.Pa.1992) (similarly distinguishing *Bethesda*); *Memorial Hosp. v. Sullivan*, 779 F.Supp. 1406, 1408–09 (D.D.C.1991) (same).

The Second Circuit likewise has not addressed the meaning of "final determination" in § 1395oo (a), and other courts have reached differing answers. *See, e.g., Staten Island Hosp. v. Sullivan*, No. 91–0733 (RCL), slip op. at 9 & n. 6 (D.D.C. Mar. 31, 1992) (concluding that denial of request to reopen is not a final determination); *John Muir Mem. Hosp. v. Califano*, 457 F.Supp. 848, 853 & nn. 10–11 (N.D.Cal.1978) (same); *cf. State of Oregon v. Bowen*, 854 F.2d 346, 349 (9th Cir.1988) (stating that the Secretary "concedes in his briefs" that denial of a request to reopen is a final determination); *Kootenai Hosp. Dist. v. Bowen*, 650 F.Supp. 1513, 1520 (N.D.Cal.1987) (concluding denial of a request to reopen is a final determination).[6]

We find most convincing the reasoning of those courts that have concluded that a denial of a request to reopen is not a final determination. As the district court for the District of Columbia reasoned in *Staten Island Hospital*, slip op. at 9 n. 6, an intermediary's decision not to reopen is basically a decision not to disturb its previous determination. As such, it is akin to the decision of a judicial panel or en banc court to deny rehearing, and "no one supposes that that denial, as opposed to the panel opinion, is an appealable action." *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 280, 107 S.Ct. 2360, 2366, 96 L.Ed.2d 222 (1987). Other courts, reasoning along similar lines, have found similar types of actions, by intermediaries or otherwise, not to be "final determinations." *See, e.g., St. Joseph's Hosp. v. Heckler*, 786 F.2d 848, 851–53 (8th Cir.1986) (finding that PRRB refusal to hear untimely appeals was not a "final determination" reviewable under § 1395oo (f)(1)); *Saline Community Hosp. Ass'n v. Secretary of HHS*, 744 F.2d 517, 520–21 (6th Cir.1984) (intermediary's refusal to allow untimely

---

**5.** The Court also rested its conclusion on the language of § 1395oo (d) which, it concluded, confers broad review powers on the PRRB. 485 U.S. at 405–06, 108 S.Ct. at 1259. As discussed *infra* in section (b), however, this provision governs the Board's review powers only once its jurisdiction has been invoked; it does not expand the Board's jurisdiction beyond what is set out in § 1395oo (a).

**6.** Defendants cite several other cases which also conclude that a denial of reopening is unappealable, but these cases base their conclusions on the language of the Medicare regulations rather than the statute, and accordingly they are cited in the discussion of the regulations in section (2) *infra*.

amendment to cost report does not constitute final decision subject to review).

To hold otherwise would effectively allow providers to circumvent the 180–day limit on appeals to the PRRB set by § 1395*oo* (a), as hospitals could revive their objections to an NPR perpetually merely by filing requests to reopen every three years after receiving the NPR. *Albert Einstein Med. Ctr. v. Sullivan,* 830 F.Supp. 846, 851 (E.D.Pa.1992); *Staten Island Hospital,* slip op. at 9 n. 6; *John Muir Mem. Hosp.,* 457 F.Supp. at 853 n. 11 ("To rule otherwise would be to render a decision that a cost report can never be closed"). As the Supreme Court has stated in a related context (an attempt to seek review of a decision by the Secretary of Health, Education, and Welfare not to reopen a claim for Social Security benefits):

> [A]n interpretation that would allow a claimant judicial review simply by filing— and being denied—a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in [the judicial review section of the Social Security Act], to impose a 60–day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits.

*Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977) (citation omitted).

Thus, we conclude that the most reasonable construction of the Medicare statute is that Congress intended that denials of reopening not be considered appealable "final determinations" under § 1395*oo* (a). However, since Congress has not "directly addressed the precise question at issue," we must not "impose [our] own construction on the statute," *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782, but we turn instead to the construction put on the statute by the Secretary. Before doing so, however, we briefly address several other statutory provisions erroneously invoked by plaintiffs.

#### b. *Other Statutory Provisions Invoked by Plaintiffs*

Plaintiffs ask us to conclude that two other provisions of the Medicare statute have the effect of expanding the jurisdiction granted to the PRRB by § 1395*oo* (a). We find no merit in these arguments.

Plaintiffs rely in particular on § 1395x(v)(1)(A)(ii), a provision taken from the definitional section of the Medicare statute. This provision, which is part of the subsection defining the meaning of "reasonable costs," requires the Secretary to promulgate regulations which

> shall ... (ii) provide for the making of *suitable retroactive corrective adjustments* where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.

42 U.S.C. § 1395x(v)(1)(A)(ii) (emphasis added).

Plaintiffs suggest that it is this portion of the Medicare statute which authorizes the reopening procedures at issue in this litigation (codified at 42 C.F.R. §§ 405.1885–1889), and that this provision imposes an affirmative duty on the Secretary to reopen cost reports upon request whenever the Secretary initiates a change in policy that results in an increase in Medicare reimbursement for closed fiscal years. An interpretation which would make denials of reopening requests unreviewable, they argue, is inconsistent with this congressional mandate, which "clearly implies that retroactive change must be made where appropriate." Plaintiffs' Memorandum of Law ("Pls.' Mem.") at 10; *and see State of Oregon v. Bowen,* 854 F.2d 346, 349 (9th Cir.1988) (concluding that § 1395x(v)(1)(A)(ii) authorizes reopening and supports reviewability); *Regents of Univ. of Calif. v. Heckler,* 771 F.2d 1182, 1188–89 (9th Cir.1985) (same).

This argument, however, misconstrues the function of § 1395x(v)(1)(A)(ii) within the Medicare statute. As the Supreme Court has made clear since the Ninth Circuit's decisions in *State of Oregon* and *Regents,* this provision does not authorize reopening procedures; rather, it authorizes a year-end book-balancing to bring interim estimated Medicare reimbursement payments into line with the actual amount of reimbursement to which a provider is entitled at the end of a fiscal year. *See Good Samaritan Hosp. v. Shalala,* — U.S. ——, —— – ——, 113 S.Ct. 2151,

2157–60, 124 L.Ed.2d 368 (1993); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 209–13, 109 S.Ct. 468, 472–74, 102 L.Ed.2d 493 (1988); *Mt. Diablo Hosp. v. Shalala*, 3 F.3d 1226, 1231 (9th Cir.1993) ("to the extent that our opinion in *Regents* conflicts with *Good Samaritan*, we recognize that the decision in *Regents* has been overruled"). Accordingly, plaintiffs' reliance on this section of the Medicare statute is baseless.

■ Plaintiffs rely as well on § 1395*oo* (d), which sets out the powers of the PRRB to affirm, reverse, or modify NPRs and other decisions by intermediaries. This section provides in part:

> The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report *and to make any other revisions on matters covered by such cost report ... even though such matters were not considered by the intermediary ...*

42 U.S.C. § 1395*oo* (d) (emphasis added).

Plaintiffs contend that the PRRB's refusal of jurisdiction "contradicts the broad authority Congress granted the PRRB" in this section. Pls.' Mem. at 10. Plaintiffs' invocation of this section as expanding the PRRB's jurisdiction is misplaced, however. Subsection (d), as the Supreme Court has explained, does not expand the Board's jurisdiction beyond that set out in subsection (a), but merely "sets forth the powers and duties of the Board *once its jurisdiction has been invoked.*" *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 405, 108 S.Ct. 1255, 1259, 99 L.Ed.2d 460 (1988) (emphasis added). It merely "allows the Board, *once it obtains jurisdiction pursuant to subsection (a),* to review and revise a cost report with respect to matters not contested before the fiscal intermediary." *Id.* at 406, 108 S.Ct. at 1259–60 (emphasis added). Thus, plaintiffs' efforts to find other sections of the Medicare statute which expand the jurisdiction of the PRRB beyond that set out in § 1395*oo* (a) are meritless.

2. *The Regulations*

Since we conclude that Congress, in § 1395*oo* (a), has not unambiguously deter-

mined whether a denial of a reopening request is an appealable "final determination," we turn now to the Secretary's regulations on reopening to see whether they resolve "doubts that might exist from a reading of the bare words of [the] statute." *Good Samaritan Hosp. v. Shalala*, —— U.S. ——, ——, 113 S.Ct. 2151, 2159, 124 L.Ed.2d 368 (1993).

Reopening of NPRs and other reimbursement decisions is not mentioned in the Medicare statute but is authorized by the statute's implementing regulations, 42 C.F.R. §§ 405.-1885 to .1889. The regulations provide in pertinent part:

> A determination of an intermediary ... may be reopened with respect to findings on matters at issue in such determination or decision, by such intermediary officer ... on the motion of the provider ... to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3 years of the date of the notice of the ... decision....

*Id.* § 405.1885(a). The regulations provide only one relevant exception to the three-year time limit on reopening: An intermediary decision "shall be reopened and revised at any time if it is established that such determination or decision was procured by fraud or similar fault of any party." *Id.* § 405.-1885(d).

The regulations state that when an intermediary decision is reopened and revised, the revision will be considered an appealable final determination, *id.* § 405.1889; however, the regulations do not directly address the appealability of a denial of reopening. They do, however, provide one ambiguous directive, the meaning of which the parties dispute. Section 405.1885(c) (the provision on which the PRRB relied in refusing jurisdiction) provides that "[j]urisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision."

The Secretary cites numerous cases supporting the PRRB's reading of this provision to preclude review of an intermediary's denial of reopening. *See St. Mary of Nazareth Hospital Center v. Schweiker*, 741 F.2d 1447,

1449 (D.C.Cir.1984) (per curiam) (concluding that § 405.1885(c) makes denials of reopening unappealable); *Athens Community Hospital, Inc. v. Schweiker,* 743 F.2d 1, 4 n. 4 (D.C.Cir.1984) (same), *overruled on other grounds, Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988);[7] *Staten Island Hosp. v. Sullivan,* No. 91–0733 (RCL), slip op. at 9–10 (D.D.C. Mar. 31, 1992) (same); *Memorial Hosp. v. Sullivan,* 779 F.Supp. 1406, 1408–09 (D.D.C. 1991) (same); *University of Michigan Hosps. v. Heckler,* 609 F.Supp. 756, 761–63 (E.D.Mich.1985) (same; "the regulations give the fiscal intermediary complete discretion over requests to alter cost reports that are made after the issuance of the NPR").

Plaintiffs, in turn, cite two cases from the Ninth Circuit which present an alternative, but also plausible, reading of the provision— as merely requiring a provider to seek reopening initially from the intermediary which issued the NPR, but not precluding the PRRB from reviewing the intermediary's decision. *State of Oregon v. Bowen,* 854 F.2d 346, 349–50 (9th Cir.1988) (although § 1885(c) disqualifies the Board from deciding initially whether fiscal intermediary should reopen, it does not bar Board from reviewing intermediary's decision for abuse of discretion); *Kootenai Hosp. Dist. v. Bowen,* 650 F.Supp. 1513, 1520 (N.D.Cal.1987) (same).

■ Plaintiffs present some persuasive policy reasons for extending review to denials of reopening. As the Ninth Circuit noted in *State of Oregon,* 854 F.2d at 350 (and as plaintiffs note repeatedly), the Supreme Court has recognized a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. of Family Physicians,* 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623

---

7. Contrary to plaintiffs' assertions, *Athens* continues after *Bethesda* to be persuasive authority for the conclusion that a denial of reopening is unreviewable. *Bethesda* dealt not with the PRRB's jurisdiction over refusals to reopen but with the breadth of PRRB review over cost reports *once the PRRB has jurisdiction. See* discussion *supra* p. 794.

8. 42 C.F.R. § 405.1885(d) provides that intermediary decisions "shall be reopened and revised at

---

(1986). Judicial review of final agency action "will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Id.* (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)). If the PRRB is unable to review Empire's denial of plaintiffs' reopening request, then Empire's decision to deny reopening becomes entirely discretionary and unreviewable, despite criteria regarding the reopening decision set out in the regulations.[8] As the court noted in *Kootenai:*

> The fiscal intermediaries are merely contractors. They are not officers of the Secretary. Under the Secretary's view, the fiscal intermediary could reject *all* requests to reopen, whether or not the requests had merit, and the Review Board could not intervene.

650 F.Supp. at 1520.

■ We reject the Ninth Circuit's conclusion for several reasons. First, it ignores the policy set by the Secretary in the manual setting out policies and procedures for provider reimbursement under the Medicare program. To the extent that there is any ambiguity in § 405.1885(c)'s assertion that jurisdiction for reopening "rests exclusively" with the reopening agency, this is put to rest in the manual, which expressly precludes review of intermediaries' decisions denying reopening. *See* Provider Reimbursement Manual ("PRM") § 2932.1 ("A provider has no right to a hearing on a finding by an intermediary that a reopening is not warranted"). The Secretary's interpretation of the regulations as set forth in the PRM is entitled to deference. *St. Mary's Hosp. v. Blue Cross & Blue Shield Ass'n,* 788 F.2d 888, 890 (2d Cir.1986) (PRM, "[w]hile without the force of law, [is] entitled to be given weight").

---

any time" if it is determined that they were procured through "fraud or similar fault." PRM § 2931.2, governing reopening requests made within 3 years, provides that "[w]hether or not the intermediary will reopen a determination, otherwise final, will depend upon whether new and material evidence has been submitted, or a clear and obvious error was made, or the determination is found to be inconsistent with the law."

Secondly, we find the Ninth Circuit's reading of § 405.1885(c) inconsistent with the framework of the Medicare regulations. In particular, while § 405.1889 expressly provides for review of amended NPRs after reopening, there is no comparable provision authorizing review of reopening denials. This suggests a decision by the Secretary to make reopening denials unreviewable. *See Memorial Hosp.*, 779 F.Supp. at 1409 & n. 7.

■ Finally, we are not persuaded by the policy reasons relied on by the Ninth Circuit (and by plaintiffs) that there must be judicial review of reopening denials. The fact that the denial of reopening was made by a private entity (Empire) does not mean *per se* that judicial or administrative review is required. *See Schweiker v. McClure*, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) (upholding the constitutionality of unreviewable Medicare hearings by disinterested officers selected by private insurance carriers). Under the Medicare program, fiscal intermediaries such as Empire act as agents of the Secretary and are indemnified by the Secretary for their actions under the Medicare program. 42 C.F.R. § 421.5(b). Accordingly, the Secretary (or, more precisely, HCFA), not the fiscal intermediary, is the real party in interest in any litigation seeking reimbursement from the program. *Id.; Bodimetric Health Services, Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 487–88 (7th Cir. 1990) (fiscal intermediaries act on behalf of the Secretary, who is the real party in interest in Medicare reimbursement litigation).

■ Additionally, the general presumption that agency action should be reviewable lacks force in the context of this litigation. First, reopenings of administrative proceedings are disfavored due to a strong public policy in bringing litigation to an end. *INS*

*v. Abudu*, 485 U.S. 94, 107, 108 S.Ct. 904, 913, 99 L.Ed.2d 90 (1988). Second, as discussed above, Congress has sharply limited judicial review of action arising under the Medicare statute, restricting it to the extent expressly provided by the statute. 42 U.S.C. § 1395ii; *Heckler v. Ringer*, 466 U.S. 602, 614–16, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984); *Califano v. Sanders*, 430 U.S. 99, 108–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977).[9]

In *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court rejected a challenge to a denial of reopening in a related context, Title II of the Social Security Act, which governs disability benefits. In that case, the Court interpreted the jurisdiction-preclusion section of the Social Security Act, 42 U.S.C. § 405(h) (which is incorporated into the Medicare statute by 42 U.S.C. § 1395ii), as restricting judicial review to the extent expressly provided in the act. 430 U.S. at 104–07, 97 S.Ct. at 983–85. Consequently, the Court upheld a district court's decision that it lacked jurisdiction to review an administrative denial of plaintiff's disability claim. The Court concluded that the judicial-review provision of the disability statute expressed Congress' clear intention to make such reopening decisions unreviewable. The Court stated:

> Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice.

*Id.* at 108, 97 S.Ct. at 986.

Our duty, of course, is likewise to respect the choice of Congress, as well as the reasonable construction that the Secretary has

---

9. Thus, plaintiffs' reliance on dicta about judicial review under the ICC statute is inapposite. Plaintiffs rely on language in *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 279, 107 S.Ct. 2360, 2366, 96 L.Ed.2d 222 (1987), in which the Court stated:

> If review of denial to reopen for new evidence or changed circumstances is unavailable, the petitioner will have been deprived of all opportunity for judicial consideration ... of facts which, through no fault of his own, the original proceeding did not contain.

*Locomotive Engineers* is distinguishable in that it dealt with judicial review under the Hobbs Act, 28 U.S.C. § 2341 *et seq.*, which contains no jurisdiction-precluding language of the type contained in the Medicare statute. *See id.* at 292 n. 7, 107 S.Ct. at 2373 n. 7 (Stevens, J., concurring in the judgment) (distinguishing the case from *Califano* and others which, like the case before us, concerned statutes which contain language expressly limiting judicial review).

placed on that choice. We conclude that the Secretary's determination, in the Medicare regulations and the Provider Reimbursement Manual, that denials of reopening requests are unreviewable is a reasonable interpretation of the Medicare statute.

## CONCLUSION

For the reasons set forth above, we conclude 1) that our jurisdiction under the Medicare statute is limited to reviewing the PRRB's determination that it lacked jurisdiction to review Empire's denial of plaintiffs' reopening request; and 2) that the PRRB did not err in concluding that it lacked jurisdiction. Accordingly, plaintiffs' claims seeking reopening and revision of their cost reports are dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and defendants' motion for summary judgment is granted, dismissing plaintiffs' remaining claim seeking reversal of the PRRB's jurisdictional determination.

Defendants' motion is granted, and the case is dismissed.

SO ORDERED.