### ASHLAND REGIONAL MEDICAL CENTER, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, in her official capacity, Bruce C. Vladeck, Administrator, Health Care Financing Administration, in his official capacity, and Richard C. Rinschler, Director, Provider Audit and Settlement, Blue Cross of Western Pennsylvania, in his official capacity, Defendants.

Civil Action No. 97–CV–0036.

United States District Court, E.D. Pennsylvania.

April 3, 1998.

Marjorie Lynn McMahon, Ellen Covner, Steven B. Goodman, Dilworth, Paxson, Kalish & Kauffman LLP, Philadelphia, PA, for Plaintiff.

Marilyn May, U.S. Attorney's Office, Philadelphia, PA, for Defendants.

### OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### I. INTRODUCTION

Plaintiff Ashland Regional Medical Center ("Ashland") seeks judicial review of a final determination of the Provider Reimbursement Review Board ("PRRB" or the "Board") of the Health Care Financing Administration ("HCFA") denying jurisdiction over Ashland's appeals from the Blue Cross of Western Pennsylvania's (a fiscal intermediary) decision refusing to reopen prior years' Medicare reimbursement claims to allow retroactive recognition of Ashland's status as a Medicare Dependent Small Rural Hospital ("MDH"). Plaintiff asks this court to remand this case to the PRRB for a hearing on the merits of retroactively declaring Ashland a MDH. Alternatively, Plaintiff argues that because the PRRB's administrative record is incomplete, this case must be

remanded to the PRRB with directions to develop a complete record and to provide a full and satisfactory explanation of its decision.

Pursuant to a stipulation of the parties approved by the court on February 10, 1998, Plaintiff and Defendants have agreed that there are no issues of material fact and have filed cross-motions for summary judgment. For the reasons discussed below, we will grant the Defendants' Motion for Summary Judgment and deny the Summary Judgment Motion filed by the Plaintiff.

### II. FACTS [1]

Ashland is a provider of inpatient hospital services which receives reimbursement for the cost of providing those services to Medicare beneficiaries, pursuant to Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. (the "Medicare Act"). Under the Medicare Act, private insurance companies, like Blue Cross of Western Pennsylvania ("Blue Cross" or the "Intermediary"), act as intermediaries for the Secretary of Health and Human Services and determine the amount of reimbursement that providers are due. Providers, like Ashland, are paid under a prospective payment system ("PPS"). In lay terms, this means that hospitals are paid for their services to Medicare patients according to predetermined schedules of national and regional rates, and not according to the actual costs or charges.

In 1989, Congress amended the Medicare Act to create a new category of hospitals known as "Medicare dependent small rural hospitals" ("MDHs"). MDHs can potentially receive two adjustments to its Medicare reimbursement. First, an MDH can receive a special payment adjustment to its PPS payments. 42 U.S.C. § 1395ww(d)(5)(G)(i)(I). Second, a MDH can also receive an adjustment known as "the MDH volume adjustment." 42 U.S.C. § 1395ww(d)(5)(G)(iii). The bottom line is that a hospital classified as a MDH will receive more money for its services than the same hospital if it were not classified as a MDH.

---

**1.** Parties have conceded that there are no factual issues in dispute in this case. *2/6/98 Stipulation* *to File Cross–Motions*.

A hospital must meet a number of criteria to be classified as a MDH, however the only criterium important for this case is that the hospital have fewer than 100 beds. Federal regulations specify the manner by which hospitals should calculate the number of beds applicable to this requirement. According to the regulations, the number of beds are calculated "by counting the number of available bed days during the cost recording period, not including beds assigned to newborns, custodial care, and excluding distinct part hospital units, and dividing that number by the number of days in the cost reporting period." 42 C.F.R. § 412.105(b)(1992).

In order to receive Medicare reimbursements, hospitals submit cost reports to intermediaries who analyze and, if necessary, audit the report. The intermediary applies the Medicare reimbursement policies in effect for the cost reporting period and issues the final determination of Medicare reimbursement for the final year which is set forth in a Notice of Program Reimbursement ("NPR").

If a provider is dissatisfied with any aspect of the reimbursement provided in the NPR, it can request a hearing before the PRRB. In order to qualify for PRRB review, the amount in controversy must be at least $10,000 and the provider must submit a hearing request within 180 days of the initial NPR. 42 U.S.C. §§ 1395oo(a),(b). The appeal of a provider's MDH status must be made during the course of the usual appeal of the NPR. If the jurisdictional prerequisites are met and the PRRB has the authority to decide the matter at issue, *see* 42 C.F.R. §§ 405.1839, 405.1867, then the PRRB may hold a hearing and issue a decision that is potentially subject to further review by the Administrator of the HCFA. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875. Thereafter, the statute allows for appeal to a U.S. District Court. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877. In order to obtain judicial review of the agency decision, whether issued by the PRRB or the HCFA Administrator, the provider must file an action within 60 days after being notified of the final decision. 42 U.S.C. §§ 405(h), 1395(ii), 1395oo(f)(1).

Separate from the statutory administrative and judicial appeals process, the Secretary's regulations provide for reopening of final reimbursement determinations. If a provider does not timely appeal the specific determination included in the initial NPR, then the cost report is considered final. The regulations permit, however, reopening a cost report to make limited corrections on otherwise final reimbursement determinations. An intermediary's determination "may be reopened with respect to findings on matters at issue" either on a motion of the intermediary or the provider, provided that the reopening request is made within three years of the finalization of the specific cost report determination included in the NPR. 42 C.F.R. § 405.1885(a).

An intermediary is required to reopen a decision in certain situations not at issue in this case. 42 C.F.R. § 405.1885(b). Otherwise, according to the Board's position, an intermediary's decision to reopen a case is discretionary. Under PRM regulations, "[w]hether or not the intermediary will reopen a determination, otherwise final, will depend on whether new and material evidence has been submitted, or a clear and obvious error was made, or the determination is found to be inconsistent with the law, regulations and rulings, or general instructions." PRM § 2931.2, *reprinted in* CCH Medicare and Medicaid Guide ¶ 7738 ("PRM").

The regulations specifically provide that when reopening is granted, a provider has the right to appeal the result of the reopening to the PRRB. 42 C.F.R. § 405.1889. However, if the fiscal intermediary denies a reopening request, the regulations do not authorize an appeal to the PRRB, but instead provide that "jurisdiction for reopening a determination or decision rests exclusively with the administrative body that rendered the last determination or decision." 42 C.F.R. § 405.1885(c). Thus, the PRM states that "[a] provider has no right to a hearing on a finding by an intermediary or hearing officer that a reopening or correction of a determination or decision is not warranted." PRM § 2931.1.

PRM § 2931.2 also gives the intermediary discretion to permit a provider to file an amended cost report in limited circumstances. However, according to the Board,

"once a cost report is filed, the provider is bound by its elections." Generally, "a provider may not file an amended cost report to avail itself of an option it did not originally elect." PRM § 2931.2. An intermediary's refusal to permit a provider to amend a cost report falls under the scope of the reopening regulations, *Westchester General Hospital v. Blue Cross and Blue Shield Association/Blue Cross of Florida*, CCH Medicare and Medicaid Guide ¶ 45,181 at 53,489 (HCFA Administrator Decision 1997), and is not a reviewable decision. *Bon Secours Heartlands Home Health Agency v. Blue Cross and Blue Shield Association/Blue Cross and Blue Shield of Maryland*, CCH Medicare and Medicaid Guide ¶ 41,690 at 37,337 (HCFA Administrator Decision 1993).

At issue in this case are Ashland's reimbursement claims involving three fiscal years ending ("FYE")February 14, 1992, June 30, 1992, and June 30, 1993. Ashland took over the operation of the former Ashland State General Hospital ("ASGH") from the Commonwealth of Pennsylvania on or about February 15, 1992. When filing cost reports with Blue Cross for the above three time periods, Ashland followed its predecessor's practice of listing the number of licensed beds instead of the average number of beds available. This led Ashland to report that it had more than 100 beds. Ashland asserts, however, that the number of beds actually available throughout these three time periods was always less then 100 beds. Thus, because of the hospital's bed reporting errors, Blue Cross determined that Ashland was not entitled to MDH status. Had Ashland been declared a MDH, it would have received an extra estimated $1,530,870 for FYE 2/14/92, an extra estimated $910,514 for FYE 6/30/92 and an extra $2,987,561 for FYE 6/30/93. All told, Ashland's reporting error cost the hospital an estimated $5,428,945 in Medicaid reimbursements.

In March of 1994, Ashland became aware that it qualified as an MDH, after learning that a similarly situated hospital had obtained MDH classification, retroactively, by counting the number of available beds instead of the number of licensed beds. Ashland contacted both the HCFA and Blue Cross on or about April 1994 and requested recognition of its status as a MDH for the current cost reporting period, as well as retroactive recognition for the three prior reporting periods. Ashland claimed that it could substantiate that the hospital maintained less than 100 beds during the relevant times. Based on evidence submitted by Ashland, HCFA's region office confirmed that Ashland maintained less than 100 beds and recognized that Ashland qualified as a MDH for FYE 1994. Plain. Ex. A.

Meanwhile on June 23, 1994 and November 22, 1995, based on the cost reports originally submitted by Ashland, Blue Cross issued Notices of Program Reimbursement ("NPR") for the hospital for FYE's 2/14/92, 6/30/92 and 6/30/93 which did not provide for Ashland's reimbursement as an MDH. *Administrative Record* ("A.R.") at 7–31, 110–23, 272–98. Nevertheless, Ashland continued to press for retroactive MDH status. HCFA, however, indicated that it could not verify Ashland's status as an MDH retroactively and directed the hospital to Blue Cross for a determination whether the prior cost reports might be reopened to allow Ashland to amend the number of beds reported. *A.R.* at 76. HCFA stated that the Intermediary would have to decide whether the cost reports could be reopened and whether amended cost report information could be accepted. *Id.*

Ashland then requested that the Intermediary reopen the NPRs by a October 13, 1994 letter. *Answer* at ¶ 17.[2] Blue Cross examined the hospital's cost reports from 1991 through 1994 to determine whether the hospital's square feet had been changed in the reports. *A.R.* at 78–79. The Intermediary also visited Ashland to examine the number of beds available to substantiate the change in square feet reported in the 1994 report (which was substantially different from those reported in the three prior cost reports). *Id.; Answer* at ¶ 20. However, according to the Plaintiff, the Intermediary refused to complete the review process by allowing Ashland to offer additional substantiation of its MDH claims. *A.R.* at 79. And, Blue Cross decided not to reopen any of the cost reports from prior years. *Id.*

---

**2.** This letter, however, is missing from the Administrative Record. Plaintiffs assert that the absence of this letter is proof that the Administrative Record is inadequate on its face.

On December 14, 1994, Ashland filed requests for appeal with the Board based on Blue Cross's refusal to reopen the NPRs to allow Ashland's cost reports to be amended to reflect the hospital's MDH status. *A.R.* at 108–09, 195–96; Plain. Ex. C. The Intermediary, through a February 23, 1995 memo, informed the Board of its opinion that the Board lacked jurisdiction over the Intermediary's refusal to reopen the NPRs. *A.R.* at 90. The Board directed Ashland to submit position papers responding to the Intermediary's challenge to the Board's jurisdiction over the matter. Ashland complied with the Board's request by filing briefs and exhibits. *A.R.* at 38–88, 124–75, 299–350. The Intermediary did not file any position papers on the issue, beyond its February 23rd letter.

On August 5, 1996, the Board notified Ashland and the Intermediary that HCFA had misplaced the files for the cases at issue. *A.R.* at 93. The Board requested Ashland to submit copies of its initial appeal requests, the Intermediary's final determination being appealed and its position papers. The Intermediary was requested to supply copies of any documentation it previously sent regarding these cases so that the files could be reconstructed. *Id.* According to the Plaintiff, the material submitted by the Intermediary amounts to only 12 pages out of the 366 page reconstructed Administrative Record. *Plaintiff Ashland Regional Medical Center's Memorandum in Support of its Motion for Summary Judgment* ("Plaintiff's Motion") at 7.

On November 4, 1996, the Board issued its final determination that it lacked jurisdiction over Ashland's appeals. The Board based its decision on 42 C.F.R. § 405.1885(c) which states that jurisdiction for reopening a determination rests solely with the administrative body (in this case, the Intermediary) who originally rendered the last determination and on the district court's decision in *St. Vincent Health Center v. Shalala,* 937 F.Supp. 496 (W.D.Pa.1995), *aff'd* 96 F.3d 1434 (1996) (Table) ("*St.Vincent*"), holding that the Board's refusal to review an intermediary's decision not to reopen a cost report was proper. The Board's decision letter did not address the Plaintiff's argument that the Intermediary had constructively reopened the cost reports through its actions.

Plaintiff has filed this suit asking us to remand the case to the Board to consider the merits of the Plaintiff's claims, or in the alternative to develop a more complete administrative record.

## III. DISCUSSION

### A. *Standard Of Review*

Both sides in this case have submitted motions for summary judgment. The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248. All inferences must be drawn and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3 (*quoting* Fed.R.Civ.P. 56(e)); *see also First National Bank of Pennsylvania v. Lincoln National Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson,* 477 U.S. at 248–49.

In determining which side of this case is entitled to summary judgment, this court's review of the Plaintiff's complaint is limited

by the Medicare statute. 42 U.S.C. § 1395oo(f)(1). The Medicare statute provides that agency decisions will be reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Under the APA, we may only set aside a final agency action when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or when the action is "unsupported by substantial evidence" in the administrative record taken as a whole. 5 U.S.C. § 706(2)(A),(E); *Monongahela Valley Hospital, Inc. v. Sullivan,* 945 F.2d 576, 591 (3d Cir.1991).

▆ Furthermore, as the D.C. Circuit has recognized, "to the extent HHS has based its decision on the language of the Medicare Act itself," the agency is owed deference. *Marymount Hospital, Inc. v. Shalala,* 19 F.3d 658, 661 (D.C.Cir.1994), *citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("*Chevron*"). Under *Chevron,* courts should defer to an agency's interpretation of a statute, so long as it is a permissible construction, unless Congress has spoken on the particular issue at hand. *HCA Health Services of Oklahoma, Inc. v. Shalala,* 27 F.3d 614, 617 (D.C.Cir.1994) ("*HCA*"). Deference to the agency is especially appropriate where Congress has delegated responsibility for a regulatory scheme as intricate as Medicare. *Butler County Memorial Hospital v. Heckler,* 780 F.2d 352, 356 (3d Cir.1985). And, the Secretary's interpretation of her own regulations is entitled to "substantial deference," and must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson University v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).

B. *Plaintiff Is Not Entitled To Have Its Case Remanded To The PRRB For A Hearing On The Merits*

1. **The Board Correctly Determined That It Did Not Have Jurisdiction Over Ashland's Appeals Since The Intermediary Refused To Reopen The Case**

▆ The PRRB properly held that it did not have jurisdiction over Ashland's appeal of the Intermediary's refusal to reopen the three cost reports/NPRs at issue. The Secretary's regulations provide that an intermediary *may* reopen an NPR on its own motion or at a provider's request. 42 C.F.R. § 405.1885(a). However, as we have already discussed in the Facts section of this Opinion, the reopening of a case is strictly discretionary and the Secretary's regulations provide that "jurisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision." 42 C.F.R. § 405.1885(c). Thus, the Board has determined that a "provider has no right to a hearing by an intermediary or hearing officer that a reopening or correction of a determination or decision is not warranted." PRM § 2932.1.

The PRRB's decision that providers are not entitled to review of reopening denials is a reasonable construction of the Medicare statute. *See St. Vincent,* 937 F.Supp. at 503–04. Indeed, the overwhelming majority of courts have upheld the Board's view that it lacks jurisdiction over such denials. *See Your Home Visiting Nurse Services, Inc. v. Secretary HHS,* 132 F.3d 1135 (6th Cir.1997); *Good Samaritan Hospital Regional Medical Center v. Shalala,* 85 F.3d 1057 (2d Cir.1996) ("*Good Samaritan*"); *Athens Community Hospital, Inc. v. Schweiker,* 743 F.2d 1, 4 n. 4 (D.C.Cir.1984), *overruled on other grounds, Bethesda Hospital Association v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988); *St. Vincent,* 937 F.Supp. at 503–04; *Binghamton General Hospital v. Shalala,* 856 F.Supp. 786, 795 (S.D.N.Y.1994) ("*Binghamton*"); *Memorial Hospital v. Sullivan,* 779 F.Supp. 1406, 1408–09 (D.D.C.1991). *But see State of Oregon on Behalf of Oregon Health Sciences University v. Bowen,* 854 F.2d 346 (9th Cir.1988).

Such a construction of the statute is supported by the plain language of the Medicare statute which does not contemplate jurisdiction over an intermediary's denial of reopening. *See* 42 U.S.C. § 1395oo(a). Indeed, reopening is purely a creature of regulation, *St. Vincent,* 937 F.Supp. at 504, and therefore any right to reopening is governed by the regulation that created it. 42 C.F.R.

§§ 405.1885–89; *see Binghamton,* 856 F.Supp. at 796.

Furthermore, though the statute grants jurisdiction over an intermediary's final determination regarding the total amount of program reimbursement due to the provider, this should not be read to include denials of reopening requests. While a decision not to reopen may be in some sense final, it does not establish an amount of program reimbursement. Instead, it "is a final determination that there are not grounds on which to reconsider a previous final determination as to the amount of program reimbursement." *Good Samaritan,* 85 F.3d at 1061, *quoting* 894 F.Supp. at 690; *see also St. Vincent,* 937 F.Supp. at 504. Consequently, a reopening denial is "akin to a decision of a judicial panel or en banc court to deny rehearing, and 'no one supposes that denial, as opposed to the panel opinion, is an appealable action.'" *Binghamton,* 856 F.Supp. at 794, *quoting I.C.C v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 280, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987).

Ashland asserts, however, that the Board's interpretation that it does not have jurisdiction over an intermediary's decision not to reopen a case cannot be reasonable because such an interpretation would afford a provider no procedural rights when it timely seeks to correct an error in its cost reports affecting its provider status. *Plaintiff's Memorandum in Opposition to Defendants' Cross–Motion for Summary Judgment* ("Plaintiff's Memorandum in Opposition") at 17. Plaintiff attacks the "scheme, set forth by Defendants," where once "Ashland made an initial error on its cost reports," the Plaintiff "had no rights to any review, but remained subject to the whim and caprice of the Intermediary, the agency's private contractor." *Plaintiff's Memorandum in Opposition* at 18. Plaintiff argues that, under the Defendants' system, "the Intermediary had complete discretion to decide whether to permit Ashland to amend the cost reports … and its refusal to permit amendment was *unreviewable by the Board.*" *Id.* at 18–19 (emphasis in original). Plaintiff argues that an interpretation of the statute and regulations that provides a provider, like Ashland, no review of an intermediary's decision not to reopen a cost report, is "unjust, unsound and in direct conflict with congres-

sional policy and the law." *Plaintiff's Memorandum in Opposition* at 21.

We agree with the Plaintiff that the Board's interpretation of the regulations and statues at issue in this case is harsh. However, just because an interpretation is harsh does not make it unreasonable. It was, of course, the Plaintiff who submitted three years worth of incorrect cost reports. Under the Defendants' scheme, the Plaintiff is allowed to petition the Intermediary to correct its mistakes. However, if the Intermediary refuses to allow the provider to correct its cost reports, then the end result is that the provider is forced to live with its own mistakes. While requiring Ashland to live with its mistakes is indeed harsh (in this case a simple reporting error will cost the hospital over five million dollars), we cannot say that it is unjust.

Indeed, even in our court, simple mistakes can sometimes have draconian (and seemingly unfair) ramifications on the parties that come before us. For example, if a party fails to object to an issue at trial, then that party is barred from raising the issue on appeal, unless it involves fundamental error. Fed. R.Evid. 103. Indeed, there are often times in life that we are only given one bite at the apple and are forced to live with our mistakes. While this may sometimes seem unfair, life is not always fair. Thus, we refuse to hold that the agency's interpretation is unreasonable simply because it is strict and unforgiving.

Plaintiff also points out that the Defendants' interpretation conflicts with the regulatory provision mandating reopenings based on fraud. Ashland points out that according to regulations, "an intermediary determination … shall be reopened and revised at any time if it is established that such determination or decision was procured by fraud or similar fault of any party to the determination of the decision. 42 C.F.R. § 405.1885(d)." *St. Vincent,* 937 F.Supp. at 506–07. Thus, the court in *St. Vincent* opined that in such a case it would not be unconscionable to hold that the Board could lack jurisdiction to review the intermediary's decision. *Id.* at 507. Plaintiff claims that such "a result seems incomprehensible …

and should not be countenanced by the [c]ourt." *Plaintiff's Memorandum in Opposition* at 23. However, the case before this court does not involve fraud; it involves the Plaintiff's own mistake. Thus, while Plaintiff makes a strong argument that the Board's refusal to assert jurisdiction over an intermediary's refusal to reopen a case when that intermediary is involved in fraud may be unreasonable, that is not the case before the court today. We will therefore refrain from deciding the hypothetical case proposed by the Plaintiff until such a case is actually before this court.

Plaintiff further asserts that the Defendants' interpretation conflicts with the PRM provision establishing reopening criteria. The PRM does lay out factors that should be considered by an intermediary when determining whether or not to reopen a case. And, one of these factors, as the Plaintiff points out, is whether there has been a clear or obvious error. PRM § 2931.2. But, nowhere in the PRM does it state that reopening is required when the provider makes a mistake. Instead, as 42 C.F.R. § 405.1885(a) illustrates, an intermediary's decision to reopen a case is discretionary: "[an intermediary's decision] *may* be reopened with respect to findings on matters at issue[.]" *Id.* (emphasis added). The discretionary nature of reopening in the situation at issue (where the reopening request is based on the provider's own mistake) is bolstered by the fact that reopening is mandatory in certain other limited situations, such as when there is fraud. *See* 42 C.F.R. § 405.1885(b). Thus, we do not find that the Board's interpretation conflicts with the PRM.[3]

· Plaintiff contends that the Defendants' interpretation prevents providers from receiving a congressionally created special hospital status. *Plaintiff's Memorandum in Opposition* at 23. We disagree. It is not the Defendants' interpretation of the regulations, but Ashland's own mistakes that have prevented the hospital from being declared a MDH. Had Ashland submitted the correct number of beds to the Intermediary in the first place, its cost reports would not have to be reopened.

We also disagree with Ashland's contention that the Defendants' interpretation impermissibly delegates too much discretion to the Intermediary. Plaintiff cites a footnote from a twenty-two year-old Eighth Circuit case to stand for the proposition that the Medicare Act does not permit the Secretary to enter into agreements which would preclude any administrative review whatsoever of an intermediary's determination. *St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283, 293 n. 13 (8th Cir.), *cert. denied* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976). However, the situation at issue in this case does not prevent all administrative review of an intermediary's decision. An intermediary's issuance of an NPR is generally appealable to the PRRB, so long as certain jurisdictional requirements are met. The fact that the Board will not review an intermediary's decision not to reopen a case does not constitute a denial of any administrative review whatsoever of an intermediary's determination. The intermediary's initial determination can be reviewed through the normal means to the Board. Therefore, we do not find that the agency's interpretation delegates too much discretion to the intermediary. We also disagree with Plaintiff's assertion that the agency's decision precludes any judicial review. As this case illustrates, even if the Board refuses to assert jurisdiction, a provider, like Ashland, is still able to file an action in federal court. And though we are not giving the Plaintiff the result that it would like, we are certainly subjecting the Defendants' actions to meaningful judicial scrutiny.

Thus, despite the Plaintiff's arguments to the contrary, we find that the Board was justified in its determination that it did not have jurisdiction over Ashland's appeal of the Intermediary's reopening denial. We will next turn our attention to Plaintiff's contention that the Intermediary did, in reality, reopen Ashland's case.

---

3. We further note, that even if we read the PRM to state that an intermediary *must* reopen a case when there has been a clear error, it would not lead us to conclude that the Board's decision that it lacked jurisdiction was unreasonable. While such a reading would establish that the Intermediary incorrectly refused to reopen Ashland's case, it would not grant the Board jurisdiction over the intermediary's decision.

### 2. The Intermediary Did Not De Facto Reopen Plaintiff's Case

■ Plaintiff argues that, despite the Intermediary's statements to the contrary, Blue Cross, through its actions, actually reopened the Plaintiff's case. Ashland asserts that reopening is defined by HCFA's Provider Reimbursement Manual ("Manual") as "an affirmative action taken by an intermediary ... to re-examine or question the correctness of a determination or a decision otherwise final." Manual at § 2931(A). Plaintiff claims that the Intermediary reopened the case when it reviewed the prior years' cost reports to see whether the number of square feet in the hospital had been changed and when the Intermediary sent a representative to Ashland to tour the facility and review the number of beds available. *Plaintiff's Motion* at 10. Plaintiff's argument, however, fails both on the facts of this case and on the law.

Plaintiff's de facto reopening argument fails on the facts of this case which plainly show that no reopening ever took place. Plaintiff relies on a letter from the Intermediary to support its position that Blue Cross reopened its prior years cost reports. This letter, in relevant part, states:

> We have reviewed your B–1 square feet from Ashland Regional Medical Center's cost reports from 1991 through 1994. Our review shows there was no major change in the square feet until the 1994 cost report. Minor differences between years indicate changes could have been made between cost centers without intermediary approval. Based on this analysis and HCFA's instructions, no prior year cost reports can be reopened. We also do not believe it is appropriate to accept an amended cost report, as the B–1 square feet do not show a change that would indicate any difference in available beds from those filed.
>
> In order to substantiate the change in square feet we will conduct an onsite review, Friday, November 11, 1994, to tour your facility and review beds available.

*A.R.* at 79.

From this letter, it is obvious that the Intermediary did not, in fact, re-examine or question its prior decision regarding the NPRs. Instead, the Intermediary merely reviewed four years of cost reports to determine whether the cost reports could, in fact, be reopened. The Intermediary clearly determined, however, that reopening the cost reports would not be proper. Ashland wants this court to believe that a reopening occurred just because the Intermediary examined the reports upon Ashland's request to reopen them. Following the Plaintiff's logic, the only way for the Intermediary to have not reopened the case would have been not to look at the cost reports at any point after the Plaintiff's reopening request. Yet, how could the Intermediary determine whether it was proper it reopen the cost reports without looking at the cost reports at issue? Thus, we cannot find, under these facts, that the Intermediary's examination of the cost reports in order to determine whether they should be reopened was itself a reopening.

Furthermore, the Intermediary's on-site review of the hospital clearly did not constitute a reopening. The purpose of the on-site review was to substantiate the change in square feet reported in Ashland's 1994 cost report (for which Ashland would receive MDH status). There is no indication that the purpose of the on-site review was to examine Ashland's claims relating to the three cost reports the hospital wanted reopened. Thus, even if Ashland's contention that there was a de facto reopening were supported by the law, it is not supported by the facts of this case.

Plaintiff's position, however, is not supported by the law. Ashland has presented no cases finding a de facto reopening where an intermediary declines to reopen a case and refuse to issue a revised NPR. Plaintiff cites to the Seventh Circuit's decision in *Edgewater Hospital, Inc. v. Bowen,* 857 F.2d 1123 (7th Cir.), *mod.* 866 F.2d 228 (1989), to support its assertion that Defendants did in fact, de facto, reopen Ashland's NPR. In *Edgewater,* a hospital requested that an intermediary reopen an NPR to reconsider four disallowed items. The intermediary issued a revised NPR which granted only one of the provider's disputed claims and disallowed the other three. The intermediary asserted that the reopening and Board review applied only to the single cost item

which was adjusted. The court found, however, that regardless of the intermediary's decision not to change three of the items on the NPR, its review of all four cost items represented a reconsideration of all those challenged items. Thus, the intermediary's actions constituted a reopening of all the considered items, not only the single adjusted item. *Id.* at 1135–1137.

Even if *Edgewater* were controlling in the Third Circuit, this case is easily distinguishable from Ashland's situation. In *Edgewater*, the court found that, in response to the provider's request to reopen four items, the intermediary wrote a letter that reopened the NPR. The intermediary then issued a revised NPR that changed only one of the items the providers had asked for the intermediary to reopen. The court found, however, that the intermediary's initial letter reopened all four issues—not just the one issue which was ultimately revised. The circuit court's finding was based on the fact that the intermediary "reopened the first NPR; it sent Edgewater a letter ... explaining that it would not change three items but that it had been persuaded to allow the fourth claim; and it sent the second NPR with the revised cost reports incorporating the adjustment." *Id.* at 1135. In Ashland's case, the Intermediary did not reopen any NPRs; it did not consider any of Ashland's evidence; it did not even permit Ashland to submit amended cost reports; and it did not, like the intermediary in *Edgewater*, ultimately revise a NPR based on the provider's claim. Thus, since "this action involves a situation in which the application to reopen [has been] denied in its entirety," *Edgewater* does not apply to the Plaintiff's case. *Saint Vincent*, 937 F.Supp. at 505.

■ While Plaintiff, in order to support his de facto reopening argument, cites to social security cases where courts have found a de facto reopening of a prior application for benefits, we do not find this line of cases to be convincing. The Third Circuit has held that though typically res judicata will prevent review of social security claims denied on the merits through prior administrative decisions, a final disability determination may be reopened and reconsidered where new and material evidence is provided or the evidence shows that the determination was clearly in error. *Purter v. Heckler*, 771 F.2d 682, 691–92 (3d Cir.1985). While the Secretary's decision not to reopen a disability claim is generally not judicially reviewable, courts will examine the record to determine whether or not a reopening has actually occurred. *Id.; Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir.1987). However, when an agency (like in this case), explicitly denies reopening, courts will generally take the agency at its word. *See Stauffer v. Califano*, 693 F.2d 306, 308 (3d Cir.1982); *see also Hardy v. Chater*, 64 F.3d 405, 407–08 (8th Cir.1995); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir.1990); *Moore v. Chater*, 97 F.3d 1460, 1996 WL 498916, *1 (Table) (9th Cir.1996); *Powers v. Secretary of Health and Human Services*, 791 F.2d 934, 1986 WL 16912, *1 (Table).

Furthermore, Plaintiff cites no cases that have extended the concept of de facto reopening from social security cases to Medicare provider cases.[4] Indeed, the Third Circuit found that de facto reopening, as a "flexible approach to the application of res judicata," was necessary in social security cases because "claimants under the [SSA] are generally without assistance of counsel and are involved in a review process not safe-guarded by adversarial concepts." *Purter*, 771 F.2d at 691. This case does not involve a lone individual fighting, without a lawyer, to maintain her monthly disability payments. Instead, this case is about a hospital with access to talented attorneys and accountants trying to obtain millions of dollars in Medicare reimbursements. Thus, the *Purter* rationale for courts looking behind an agency's actions where the agency does not clearly state whether or not it has reopened a prior matter does not exist in the Medicare context. Plaintiff has failed to provide us with a legal basis from which we can determine that the Intermediary reopened its case. And, even had Ashland provided us a legal basis from which we could make this determination, the facts of this case clearly

---

4. While *Edgewater* does rely, in part, on the concept of de facto reopening, it does not draw an analogy between social security disability appeals cases and Medicare provider reimbursement cases.

show that the Intermediary did not, de facto or otherwise, reopen Ashland's cost reports/NPRs. Thus, since the Intermediary did not reopen Ashland's cost reports/NPRs and since the PRRB correctly ruled that it did not have jurisdiction to review the Intermediary's decision not to reopen the cost reports/NPRs, we will deny Plaintiff's request that we remand this case to the PRRB for a hearing on the merits of retroactively declaring Ashland a MDH.

■ Plaintiff argues that the PRRB's decision was arbitrary and capricious because it failed to explicitly address Ashland's de facto reopening argument. We disagree. Plaintiff cites to *Motor Vehicle Manufacturers Assoc. v. State Farm Mutual Auto. Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), which states that "an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Ashland argues that the PRRB entirely failed to consider an important aspect of the problem because it did not discuss Plaintiff's de facto reopening argument. First of all, we note that this definition of arbitrary and capricious is for the rule making setting, while the Plaintiff is trying to challenge the PRRB's adjudicative decision. Yet, in any case, even under this definition, we do not find that the agency's denial of jurisdiction was arbitrary and capricious.

As we have already discussed, Plaintiff's de facto reopening argument is completely without merit. The PRRB did not act in an arbitrary and capricious manner by not addressing the Plaintiff's meritless de facto reopening argument. The agency did not entirely fail to consider an important aspect of the problem at issue because it did, in fact, consider whether the Intermediary reopened the case. The PRRB took the Intermediary at its word and found that there was no reopening and therefore no jurisdiction. Had the PRRB denied jurisdiction without determining whether there was a reopening, then the agency would have entirely failed to address an important issue. But, the PRRB did address the important issue, whether the case had been reopened. Therefore, its actions were not arbitrary and capricious and we will not remand these appeals to the Board.

C. *Plaintiff Is Not Entitled To Have Its Case Remanded To The PRRB For The Development Of An Administrative Record*

■ Plaintiff argues that we must remand this case to the Board because relevant documents are missing from the Administrative Record on which the Board based its determination that it lacked jurisdiction over Ashland's claims. Plaintiff presents six documents as examples of papers that are missing from the reconstructed Administrative Record. These include an April 20, 1994 memo regarding HCFA's review of Ashland's claims and request for the Intermediary to conduct further review, Plain. Ex. A, an April 27, 1994 letter from the HCFA to the Intermediary concurring with the Intermediary's decision to recognize Ashland's MDH status for FYE 6/30/94, Plain. Ex. B, a letter from the HCFA asking Ashland and the Intermediary to submit briefs, Plain. Ex. D, a letter from HCFA to Ashland explaining HCFA's inability to retroactively verify Ashland's MDH status, Plain. Ex. H, a letter from Ashland to the Intermediary requesting that the cost reports be reopened, quoted in *Answer* at ¶ 17, and any documents related to the November 11, 1994 on-site visit to Ashland by the Intermediary.

First of all, we must point out that two of the examples of missing documents are not even directly related to Ashland's claims. The documents related to the on-site review and the letter from HCFA concurring with the Intermediary's approval of Ashland's MDH status for FYE 6/30/94 do not involve Ashland's MDH status for the three fiscal years actually at issue. Instead, they relate to Ashland's award of MDH status for FYE 6/30/94.

Secondly, none of the documents would have any impact on the Board's determination that it did not have jurisdiction over the

Plaintiff's claims. As we have already stated, the on-site documents and the April 27, 1994 letter from HCFA are not related to the Plaintiff's claims that its cost reports should have been reopened. And, we find that none of the remaining documents presented by the Plaintiff would effect the Board's decision that it did not have jurisdiction over the reopening claims in any manner.

Furthermore, Ashland presents no case law that requires us to remand the case back to the agency when, as in this case, a few unimportant documents may be missing from the administrative record. Ashland cites to *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 594, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980), and *Fowler v. Califano*, 596 F.2d 600, 604 (3d Cir.1979). Neither of these cases mandate the court to remand this case to the agency. *Harrison* merely held that when an appellate court finds that it is "unable to exercise informed judicial review because of an inadequate administrative record … [the] court may always remand a case to the agency for further consideration." 446 U.S. at 594. Here, we have no trouble making an informed judicial review based on the record which is before us. Therefore, there is no need to remand this case to the Board.

*Fowler* does not support Plaintiff's position that we must remand its case to the Board either. In *Fowler*, the SSA lost the application and denial of the plaintiff's claim and therefore held that there is no evidence from which a determination of error can exist. The SSA refused to hear her claim, even though the plaintiff provided evidence to reconstruct the record. The court remanded the case to the SSA to review the case "in view of the injustice that has been visited upon the claimant and the difficulty of proof existing through no fault of her own." *Fowler*, 596 F.2d at 604. In Ashland's case the Defendants are not using the fact that they lost the original record to deny Plaintiff's claim. Instead, the Board recreated a 366 page record from which to reach a decision. And, as we have stated, none of the purported missing documents would have had any effect on the Board's denial of jurisdiction. Therefore, *Fowler* is inapposite to this case.

We find that the Administrative Record was more than sufficient for the Board to determine that it lacked jurisdiction over the Intermediary's decision not to reopen Ashland's cost reports/NPRs. Therefore, we see no need to remand this case back to the Board to further develop the Administrative Record.

## IV. CONCLUSION

We find that the Board's decision that it lacked jurisdiction to review the Intermediary's refusal to reopen Ashland's cost reports/NPRs was not arbitrary and capricious and was supported by substantial evidence. The Board's interpretation of relevant statutes and regulations to determine that it does not have jurisdiction to review the Intermediary's failure to reopen Ashland's case was reasonable. And, Ashland's argument that the Intermediary de facto reopened its case is without merit. We further find that there is no reason to remand this case to the Board to further develop the Administrative Record. We will therefore grant the Defendants' motion for summary judgment and dismiss Plaintiff's case.

An appropriate order follows.

## ***ORDER***

AND NOW, this 3rd day of April, 1998, upon consideration of Defendants' February 19, 1998 Motion for Summary Judgment, Plaintiff's February 20, 1998 Motion for Summary Judgment, Plaintiff's March 16, 1998 Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment, Defendant's March 16, 1998 Reply Brief in Support of Motion for Summary Judgment, and the February 6, 1998 Stipulation to File Cross-Motions (including the binding stipulation that there are no issues of material fact), it is hereby **ORDERED** that:

1. Defendants' February 19, 1998 Motion for Summary Judgement is **GRANTED** in its entirety;

2. Plaintiff's February 20, 1998 Motion for Summary Judgment is **DENIED;**

3. Judgment is entered in favor of Defendants Shalala, Ashland and Rinschler, and

against Plaintiff Ashland Regional Medical Center;

4. This case is closed.