**FLETCHER ALLEN HEALTH CARE, INC., Plaintiff,**

v.

**Donna E. SHALALA, Secretary of the Department of Health and Human Services, Defendant.**

No. 2:97–CV–172.

United States District Court, D. Vermont.

Oct. 8, 1998.

Heather Elizabeth Ross, Downs, Rachlin & Martin, P.C., Burlington, VT, Albert W. Shay, Sonnenschein Nath & Rosenthal, Washington, DC, for Fletcher Allen Health Care, Inc., plaintiff.

Nancy J. Creswell, Assist. U.S. Atty., Office of the United States Attorney, Burlington, VT, for Donna E. Shalala, defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Fletcher Allen Health Care, Inc. ("the Hospital"), a private, not-for-profit teaching hospital in Burlington, Vermont, has sought judicial review of a determination by the Secretary of Health and Human Services ("Secretary" or "HHS") regarding Medicare's reimbursement of a portion of the Hospital's graduate medical education costs. Before the Court are the parties' cross-motions for summary judgment. Upon consideration of the motions, the responses and replies, oral arguments of counsel, the supplemental briefs, and the administrative record, the Hospital's motion for summary judgment is denied and the Secretary's cross-motion for summary judgment is granted.

## BACKGROUND

### I. The Medicare Program

The Medicare program is a system of health insurance for the aged and disabled. 42 U.S.C. §§ 1395–1395ggg. Under the Medicare program, an eligible Medicare beneficiary is entitled to have payment made on his or her behalf for, among other things, inpatient and outpatient hospital services provided by a participating hospital. 42 U.S.C. §§ 1395c, 1395d. A hospital, termed a "provider" of services under the Medicare Act, § 1395x(u), that has entered into an agreement with HHS to participate in the Medicare program, is eligible for payments for services rendered to beneficiaries. 42 U.S.C. § 1395cc. Provider hospitals who

supply training to medical residents and interns are entitled to reimbursement by Medicare for a share of the net costs of approved graduate medical education ("GME") activities. 42 U.S.C. § 1395ww(h).

HHS contracts with fiscal intermediaries, usually health insurance companies, for the processing of payments to providers. 42 U.S.C. § 1395h. A provider files annually with its fiscal intermediary a cost report identifying its total allowable costs incurred in treating Medicare beneficiaries for the just-completed year. This cost report serves as the basis for calculating the provider's Medicare reimbursement.

The fiscal intermediary reviews the cost report, undertakes any necessary audits, and informs the provider of the amount of Medicare reimbursement to which it deems the provider is entitled through a written Notice of Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803. If the provider is not satisfied with the determination reported in the NPR, and if the total amount in controversy is at least $10,000, the provider may request a hearing before the Provider Reimbursement Review Board ("PRRB") 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. PRRB decisions may be reviewed by the Administrator of the Health Care Financing Administration ("HCFA"), to whom the Secretary of HHS has delegated this authority. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1801, 405.1875. The HCFA Administrator's determination may be appealed to a federal district court. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877.

Since October 1, 1983, providers have been reimbursed for costs associated with the provision of inpatient hospital services to Medicare beneficiaries under a prospective payment system ("PPS"). 42 U.S.C. § 1395ww(d). Under this system, providers are paid a prospectively determined rate for each Medicare patient discharge based on the patient's diagnosis. The PPS system was phased in over four years, during which providers were reimbursed according to a "blended rate" consisting of a hospital-specific rate ("HSR") and the federal PPS rate.

When Congress enacted the PPS in 1983, the direct costs of hospitals' GME programs were excluded from the system, and were reimbursed under the previous cost-based system. In April 1986, Congress modified Medicare's system for reimbursing GME costs. For cost years beginning on or after July 1, 1985, Medicare would no longer pay for most medical education costs on a cost basis, but would reimburse hospitals in an amount equal to the product obtained by multiplying 1) a standardized per resident amount calculated for a "base year," and adjusted annually thereafter for inflation (a hospital's average per resident amount, or "APRA"), by 2) the number of interns and residents in the hospital's GME programs during the cost year. 42 U.S.C. § 1395ww(h)(2), (3); 42 C.F.R. § 413.86(d).

The fiscal intermediary calculates the APRA by determining the reasonable costs attributable to the training of interns and residents incurred by the hospital in the base year, and dividing that amount by the number of full-time equivalent interns and residents who participated in the GME programs during the base year. 42 C.F.R. § 413.86(e). After an intermediary determines a hospital's base year APRA, it must notify the hospital of that amount through a Notice of Average Per Resident Amount ("NAPRA"). 42 C.F.R. § 413.86(e)(1)(v). A hospital may appeal the intermediary's determination of the APRA by filing a request with the PRRB within 180 days of the date of the NAPRA. *Id.*

The determination of an accurate APRA is critical, because that calculation forms the basis for a hospital's GME reimbursement in 1986 and for all subsequent payment years. To ensure an accurate calculation of the APRA, HCFA promulgated regulations which required fiscal intermediaries to reaudit hospitals' GME base year cost reports. 42 C.F.R. § 413.86(e). The reaudit process was designed to eliminate operating costs that had been misclassified as GME costs, and to include GME costs that had been misclassified as operating costs in the base year. Medicare Program Changes in Payment Policy for Direct Graduate Medical Education Costs, 54 Fed.Reg. 40,286, 40,288–89 (1989). Costs that had been omitted could be

included in the APRA if such costs could be documented as GME costs.

## II. *Case-specific Facts*

During the Hospital's GME base year (October 1, 1983–September 30, 1984), it operated approved GME training programs in the areas of medicine, surgery, orthopedics, pediatrics, neurology, obstetrics and gynecology, pathology, and psychiatry. The Hospital does not maintain its own teaching faculty for its GME programs, however. The interns and residents enrolled in the Hospital's GME programs are taught and supervised by faculty members of the University of Vermont College of Medicine ("University").

Blue Cross Blue Shield of New Hampshire and Vermont was the Hospital's fiscal intermediary for the fiscal year ending September 30, 1984. When the intermediary reaudited the Hospital's GME base year, it determined the Hospital's APRA to be $26,723.06, based on total GME costs of $3,896,222 and 145.8 full-time equivalent interns and residents. The intermediary notified the Hospital of its APRA by a NAPRA dated February 27, 1991.

During the reaudit process, the Hospital requested the intermediary to reclassify certain costs as GME costs that were identified in 1984 as operating costs, thereby increasing its APRA. These costs included 1) a portion of the payment made by the Hospital to the University for teaching services from the University's faculty; 2) a portion of the payment made by the Hospital to a group of physicians (University Associates in Pathology or "UAP") for teaching and supervising residents enrolled in the Hospital's pathology residency program; 3) a portion of the salaries of two secretaries for secretarial services furnished in connection with the Hospital's GME programs, and 4) a portion of the costs for office space used by medical residents participating in the GME programs. The intermediary granted the Hospital's request with respect to items three and four. The intermediary denied the Hospital's request with respect to items one and two, on the ground that the Hospital had not provided documentation necessary to support its request.

The Hospital appealed the intermediary's calculation of the Hospital's APRA to the PRRB, claiming that the documentation it supplied to support its request for adjustment of GME costs was adequate. The PRRB accepted jurisdiction over the appeal, and held a hearing on May 21, 1996. The PRRB considered whether the intermediary properly refused to reclassify the costs at issue, and concluded that with respect to compensation for University faculty teaching services the intermediary properly refused to treat them as GME costs. With respect to compensation for UAP teaching services, the PRRB concluded that the intermediary had improperly refused to reclassify the costs as GME costs. The PRRB also rejected the intermediary's arguments that the PRRB lacked jurisdiction over the appeal because the Hospital failed to comply with regulatory prerequisites for an appeal of the APRA.

The PRRB's decision was reviewed by the HCFA Administrator. The Administrator affirmed the PRRB's decision with respect to the University faculty costs, and reversed the PRRB's decision with respect to the UAP faculty costs, holding that the Hospital's documentation was insufficient to support its claim that the UAP payments should be treated as GME costs. The Administrator also ruled that neither issue was properly before the PRRB, because the Hospital failed to comply with regulatory prerequisites, specifically, that it failed to request a review of its PPS base year and an adjustment to its HSR to reflect the claimed misclassification of costs, and that it did not submit documentation supporting its requested reclassification within 180 days of the issuance of the NAPRA. This civil action pursuant to 42 U.S.C. § 1395oo(f) followed.

## DISCUSSION

### I. *Standard of Review*

■ An action for judicial review of the Administrator's decision is evaluated pursuant to Title 5, chapter 7 of the United States Code. 42 U.S.C. § 1395oo(f)(1). Title 5, Section 706 provides that a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to

be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... [or] unsupported by substantial evidence". 5 U.S.C.A. § 706(2)(A), (E) (1996); *Marymount Hosp. Inc. v. Shalala*, 19 F.3d 658, 661 (D.C.Cir.1994). In determining whether an agency has acted arbitrarily and capriciously, "a court may not substitute its judgment for that of an agency, but must determine whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *State of New York Dept. of Soc. Services v. Shalala*, 21 F.3d 485, 492 (2d Cir.1994) (internal quotations and citation omitted).

■■■ HCFA's interpretation of its own regulations is entitled to substantial deference. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). Broad deference is "warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program.'" *Id.* (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991)). HCFA's interpretation must be upheld "unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" *Id.* (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988)).

## II. *Jurisdictional Arguments*

### A. Adjustment to the HSR

■■■ The regulations which govern reimbursement for direct graduate medical education payments are set forth in 42 C.F.R. § 413.86. The re-audit rule required that a hospital's base period per resident amount be updated as provided in 42 C.F.R. § 413.86(e). The fiscal intermediary was required to refigure the allowable graduate medical education costs for the cost reporting period, by verifying the hospital's base period GME costs, excluding any misclassified costs, and upon a hospital's request, including GME costs that were misclassified as operating costs. 42 C.F.R. § 413.86(e)(1)(ii)(A), (B), (C). In order for a hospital's misclassified

operating costs to be included as GME costs, the hospital must request a corresponding adjustment in its prospective payment hospital-specific rate ("HSR"). *Id.* at (C). If the intermediary excludes GME costs as misclassified, then the hospital may request a corresponding adjustment of its HSR. If a hospital requests review of its HSR, either because of misclassified operating costs or because of misclassified GME costs, it must do so no later than 180 days after the date of the intermediary's notice of the hospital's average per resident amount (the NAPRA). 42 C.F.R. § 413.86(j)(1)(ii), (2)(ii).

The Secretary argues that the effect of these regulations is to impose a jurisdictional requirement on a hospital that wishes to include previously misclassified GME costs in its APRA, of requesting that the intermediary review its HSR rate no later than 180 days after the date of the NAPRA. Essentially the Secretary reads the regulations as making timely HSR review by the intermediary a prerequisite to the availability of judicial review of the APRA.

The Secretary's interpretation of section 413.86(j)(2)(ii) is contrary to the plain language of the regulation and is incongruent with the regulations providing for APRA appeals. Section 413.86(j)(2)(ii) merely requires a hospital to request an adjustment of its HSR within 180 days of receiving a NAPRA which includes reimbursement amounts which have been reclassified as GME costs. In the case at bar, the intermediary rejected the Hospital's request to reclassify the University and UAP costs as GME costs. On appeal, the PRRB directed the intermediary to adjust the APRA to reflect a reclassification of the UAP payments as GME costs, but the HCFA Administrator accepted review of the PRRB's decision before the case was remanded to the intermediary for recalculation. Upon review by the Administrator, the intermediary's original determination was upheld. When and if the Hospital receives a NAPRA that includes in its APRA GME costs that were misclassified as operating costs, 42 C.F.R. § 413.86(e)(1)(ii)(C), it must request an adjustment of its HSR, *id.*, within 180 days of this NAPRA, § (j)(2)(ii), or forego inclusion of those costs in its APRA.

§ (e)(1)(ii)(C). With respect to the costs that are the subject of this judicial review, the triggering event, a NAPRA that includes GME costs that were misclassified, has not yet occurred.

The Supreme Court held the Secretary's reaudit rule to be a reasonable interpretation of Section 1395ww(h) of Title 42 ("the GME Amendment"). *Regions Hosp. v. Shalala,* —— U.S. ——, ——, ——, 118 S.Ct. 909, 913, 918, 139 L.Ed.2d 895 (1998). The Secretary's ability to adopt any reasonable interpretation of ambiguous statutory language in promulgating its regulation does not enable it to interpret its own regulation in a fashion inconsistent with the regulation's plain language, however. An agency's interpretation is not entitled to deference if "an alternative reading is compelled by the regulation's plain language." *Thomas Jefferson Univ.,* 512 U.S. at 512, 114 S.Ct. 2381. Section (j)(2)(ii) does not impose a jurisdictional prerequisite to the Hospital's appeal of its APRA.

### B. Supporting Documentation Requirement

The Secretary also argues that the Hospital failed to submit a request for review of its HSR rate which included "sufficient documentation to demonstrate to the intermediary that modification of the adjustment of the hospital's hospital-specific rate ... is warranted." 42 C.F.R. § 413.86(j)(2)(ii). As discussed above, the requirement that a hospital request review of its HSR is only triggered when it receives a NAPRA that includes GME costs that were misclassified as operating costs. 42 C.F.R. § 413.86(e)(1)(ii)(C). Because the Hospital has not yet received such a NAPRA with respect to the University and UAP payments, the Hospital has not yet failed to comply with section (j)(2)(ii)'s sufficient documentation requirement, and has not neglected a jurisdictional prerequisite for an appeal to the PRRB.

### III. *Substantive Arguments*

#### A. The University Payments

■ A majority of the PRRB held that the intermediary properly refused to treat as GME costs a portion of the payments made by the Hospital to the University, concluding that the documentation submitted by the Hospital to support the reclassification was not auditable or verifiable in accordance with program regulations. The Administrator affirmed this determination.

The Hospital did not have a formal contract with the University for the payment of graduate medical education costs during this period, but a "kind of a hand-shake agreement between the hospital and the university that evolved over the years ... based ... primarily [on] what the hospital could afford to pay the university." Simmons Test., Administrative Record ("A.R.") at 201. The Hospital claimed that 80% of the over $514,000 it paid the University for the teaching and administrative services of its faculty was a GME cost that should be included in the Hospital's APRA. To support this claim, the Hospital submitted the results of a University time survey conducted in the spring of 1984. The survey had been conducted internally in an effort to ascertain the University's costs of providing medical education. University faculty members were asked to estimate the percentage of time they spent on various activities, such as undergraduate medical education, intern/resident education, post graduate medical education, research activities, inpatient care, outpatient care, and administration. The Hospital provided the PRRB with computer printouts which summarized the data reported by each faculty member surveyed. The Hospital was unable to locate the original survey worksheets or instructions.

The intermediary was unable to audit or verify the data supplied by the Hospital, because no hours were supplied, and nothing showed how the $514,000 had been allocated. A.R. at 324. As the PRRB pointed out, there was no contract or formal agreement between the Hospital and the University stipulating the amount of payments to be made and the services to be provided in return, and therefore no record that the payments made represented allowable program costs, and no basis for an audit. A.R. at 62.

HCFA stressed in its commentary to the final rule governing payment of GME costs that no new reimbursement principles were

to be reapplied during the reaudit. The intent of the reaudit rule was "to ensure that the reimbursement principles in effect during the GME base period were correctly applied." Medicare Program Changes, 54 Fed. Reg. at 40,301. It did not rule out a hospital's ability to introduce additional GME costs not previously claimed, or GME costs previously misclassified, but required that a hospital demonstrate "to the satisfaction of the fiscal intermediary that legitimate GME costs were inadvertently omitted from the base-period cost report." *Id.* In order to satisfy the fiscal intermediary, the "costs would have to be supported by actual documentation developed during the GME base-period that was maintained in a format that can be audited." *Id.*

The general principles of cost reimbursement require that providers "maintain sufficient financial records and statistical data for proper determination of costs payable under the program." 42 C.F.R. § 413.20(a). Standardized accounting, statistics and reporting practices must be followed. *Id.* Adequate cost data must be based on financial and statistical records capable of verification by qualified auditors, and be based on an approved method of cost finding. 42 C.F.R. § 413.24(a). In order to be adequate, the cost information must be accurate and sufficiently detailed to accomplish the purpose for which it is intended. 42 C.F.R. § 413.24(c).

This Court concludes after careful review of the administrative record that the Administrator's determination that the data were unauditable and unverifiable was neither arbitrary and capricious, nor unsupported by substantial evidence. No clear error of judgment having been made, the Secretary's determination that the documentation submitted was inadequate under the general regulations governing cost reimbursement and the specific regulations governing determination of GME costs is upheld.

B. The UAP Payments

■ The PRRB held that the intermediary improperly refused to reclassify as GME costs a portion of the payments made by the Hospital to UAP for teaching services, and directed the intermediary to audit the time studies submitted and refigure the APRA. The Administrator reversed this determination, holding that the Hospital's documentation was insufficient to support the requested reclassification.

The Hospital paid UAP a little over $1.2 million for its services in 1984. These payments were recorded as laboratory costs. The Hospital requested that 95% of 24% of the $1.2 million be reclassified as GME costs. The documentation submitted in support of the UAP costs consisted of a physician time allocation questionnaire which had been submitted as part of the Hospital's cost report in 1984, and pages from physicians' calendars indicating numbers of hours spent on various activities. The Hospital arrived at its figures by totaling the number of hours recorded on the pathologists' calendars. Educational activities came to 24% of the total. The head of pathology then estimated that 95% of the educational activities were attributable to GME.

At the hearing before the PRRB, the intermediary presented testimony that the time allocation questionnaire did not qualify as a time study, and hence was inadequate, because it did not account for a specific period of actual hours worked on various activities. The intermediary also presented testimony that the calendar pages could not be audited because the data were sketchy and incomplete. A.R. at 312–18.

The calendar information was submitted to the intermediary on the date of the PRRB hearing. The intermediary's auditor had only a brief opportunity to review the materials before concluding that they were inadequate and could not be audited. The Hospital concedes, however, that the hourly totals drawn from the times recorded on the calendar pages are not directly traceable to the amount requested to be reclassified as GME costs. It argues that "minor deficiencies" in the documentation notwithstanding, the intermediary should be required to attempt to audit the material submitted, and to include some amount of the Hospital's UAP payments in the APRA.

This Court may not substitute its judgment as to the adequacy of the documenta-

tion for that of the Secretary. The Hospital has not demonstrated that the HCVA Administrator failed to consider relevant factors or used an improper standard in evaluating its documentation. It disagrees with the degree of rigor that the intermediary applied in scrutinizing its documentation. No clear error of judgment has been shown. The decision of the Secretary rejecting the reclassification of UAP payments as GME costs is upheld. *See, e.g., Ashland Reg'l Med. Ctr. v. Shalala,* 2 F.Supp.2d 675, 682 (E.D.Pa.1998) (Secretary's harsh interpretation of its regulations, if unfair, was not unjust).

## CONCLUSION

For the reasons stated above, the Hospital's Motion for Summary Judgment (paper 10) is DENIED. The Secretary's Cross–Motion for Summary Judgment (paper 14) is GRANTED. Case closed.